NORWELL *v.* CITY OF CINCINNATI

No. 72–1366.  Decided November 5, 1973

Per Curiam.

Petitioner Edward Norwell, on a plea of not guilty, was convicted of a violation of Cincinnati's disorderly conduct ordinance.  The charge was that petitioner "did unlawfully and wilfully conduct himself in a disorderly manner, with intent to annoy some person."  The judgment of conviction was affirmed by the Ohio Court of Appeals.  Further appeal to the Supreme Court of Ohio was dismissed by that court *sua sponte* "for the reason that no substantial constitutional question exists herein."

We are persuaded that the ordinance, as applied to this petitioner on the facts of his case, operated to punish his constitutionally protected speech.  We therefore grant certiorari and reverse.

The ordinance, § 901–D4 of the city's Municipal Code, reads:

"No person shall wilfully conduct himself or herself in a noisy, boisterous, rude, insulting or other disorderly manner, with the intent to abuse or annoy any person . . . ."

Petitioner, 69 years of age and an immigrant 20 years ago, is employed by his son who manages and is part

owner of a "pony keg," a small package liquor store. Petitioner works at the pony keg every evening and helps his son "because it is very dangerous." There have been break-ins at the store on several occasions and a former owner was killed there.

On Christmas night, 1971, the pony keg closed about 10:30. The son drove home, but petitioner "wanted to take a walk and get home at 11:00 to hear the news." Down the street, he was approached by Officer Johnson, who had been notified that a "suspicious man" was in the neighborhood of the pony keg. Officer Johnson testified that he approached petitioner and asked him if he lived in the area. Petitioner looked at him, "and then he turned around and walked away." The officer twice attempted to stop him, but each time petitioner threw off his arm and protested, "I don't tell you people anything." He did not run. Petitioner then was placed under arrest for disorderly conduct. Officer Johnson said he had to "push the man approximately half a block to get him into the police car. He didn't understand why he was being arrested."

Petitioner testified that he "was far from the pony keg" when the officer drove up in his car and called out something which petitioner did not understand.

> "He told me something, but I couldn't understand . . . . I said—I asked him, 'What do you want from me?' He said, 'Why are you on the street?' I said, 'I am walking on the street.' After then, he said, 'Where are you going?' I said, 'I go home.' After then, he didn't ask me anything. He was in a car. I continued to walk."

The officer pursued petitioner and grabbed him. Petitioner testified, "I didn't resist because I was concerned about my health and my life."

There is no indication in the record that it was the physical act of pushing off the officer's arm that precipitated the arrest or supported the conviction. Had this been so, one could argue, perhaps, that Mr. Norwell might have been properly charged for disorderly conduct or under a statute or ordinance that made it illegal to interfere with a police officer in the performance of his duty. That, however, is not this case. Officer Johnson testified that he "didn't charge the man with resisting because I didn't think it was a warranted cause," but that he arrested petitioner for "being loud and boisterous," and "[h]e was annoying me." The municipal judge found that petitioner was "hostile" to the officer. "I'm sure [the officer] had no feeling against this man, but this man had a feeling against him, at this time, and was not at a liberty to say." The court proceeded to find Mr. Norwell "guilty of disorderly conduct with the intent to annoy" and fined him $10 and costs "for being so noisy."

Upon this record, we are convinced that petitioner was arrested and convicted merely because he verbally and negatively protested Officer Johnson's treatment of him. Surely, one is not to be punished for nonprovocatively voicing his objection to what he obviously felt was a highly questionable detention by a police officer. Regardless of what the motivation may have been behind the expression in this case, it is clear that there was no abusive language or fighting words. If there had been, we would have a different case. See *Chaplinsky* v. *New Hampshire,* 315 U. S. 568 (1942).

The petition for certiorari is granted. The judgment is reversed.