UNITED STATES of America,
Plaintiff-Appellee,

v.

Thomas L. VARKONYI,
Defendant-Appellant.

No. 80–1596.

United States Court of Appeals,
Fifth Circuit.
Unit A

May 20, 1981.

Robert R. Harris (court-appointed), Raymond C. Caballero, Pearson, Caballero & Warach, El Paso, Tex., for defendant-appellant.

LeRoy M. Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before CHARLES CLARK and GEE, Circuit Judges, and SPEARS,* District Judge.

SPEARS, District Judge:

Thomas L. Varkonyi appeals from jury convictions stemming from charges in a three count indictment. Count I charged him with forcibly assaulting and interfering with an Immigration and Naturalization Service (INS) officer engaged in the performance of his official duties, in violation of 18 U.S.C. § 111. Counts II and III charged him with willfully and knowingly concealing, harboring and shielding two aliens, in violation of 8 U.S.C. § 1324(a). The jury returned verdicts of guilty on all three counts. We affirm.

Varkonyi's convictions were based on the following sequence of events. On March 13, 1980, Border Patrol Agents Barragan and Gomez were proceeding to make a routine check of the El Paso railroad yards; the agents were in uniform and driving a marked INS van. En route to the railroad yards, they passed Varkonyi's scrap metal yard, where they saw several men unloading a truck. As the van drew near, one of the men in the scrap metal yard yelled, "Immigration is coming", and the men

---

* District Judge of the Western District of Texas, sitting by designation.

jumped off the truck and attempted to hide behind a table in the back of that yard. The agents stopped the van and called to the men, who were visible through the fence, to come out and talk with them. Receiving no answer, Agent Barragan attempted to enter the yard to ascertain the immigration status of the workers; however, his entry was blocked at the open gate by Varkonyi, who shoved him out of the yard and threatened to call the police. Seeing the above confrontation, the workers left their hiding place and decided to voluntarily surrender. At this time, Varkonyi admonished the workers to stay put, and then told the agents these men had proper documentation.

Following their surrender, Agent Barragan gave the four aliens permission to change clothes, and informed Varkonyi that he would have to accompany the men into the warehouse while they changed. Varkonyi permitted Officer Barragan and the aliens to enter the yard, but at the warehouse he shoved Barragan away, and managed to lock him out of the building. Once inside, Varkonyi again instructed the workers not to surrender; however, three of the four workers returned themselves to the agent's custody. The fourth man escaped and was never apprehended.

Upon an investigation of the immigration status of the three workers, one was found to be a juvenile who was released to return to Mexico; the other two were detained and are named in Counts II and III of the indictment. As to the men named in the indictment, both had illegally entered the United States and neither had appropriate documents to reside or work here.[1] The men were employed by Varkonyi six days a week, sleeping in his warehouse, and as part of their agreement with him, they returned to Mexico on Saturday nights. Varkonyi knew the men were residing and working in the United States unlawfully, and, in fact, had offered to help them obtain proper papers.[2]

Following the return of verdicts of guilty on each count of the indictment, this appeal was initiated.

### I. Validity of the Indictment

■ Initially, Varkonyi contends that the assault and interference charge of the indictment is defective in several respects, primarily in that it fails to charge an offense. While this objection was not raised at the trial level, it may be examined for the first time on appeal. *United States v. Meacham*, 626 F.2d 503, 509 (5th Cir. 1980); Fed.R.Crim.P. 12(b)(2), (f). He asserts that an essential element was omitted in that the charge neglects to identify Barragan as a federal officer, or allude to Section 1114 which enumerates the officers protected by statute, and, therefore, the charge is fatally defective.[3]

■ Recognizing that an indictment must allege each and every element of an offense to pass constitutional muster, the

---

1. Esparza and Ramos were both Mexican nationals, although Ramos had a border crossing card which entitled him to enter and remain in the United States for a maximum of seventy-two (72) hours. However, on the day in question Ramos had lost his card and was forced to entry the country illegally. Consequently, both men named in the indictment were unlawfully in the United States.

2. Varkonyi had helped Ramos obtain the border crossing card and knew that it limited his lawful presence in the United States to seventy-two hours. Other evidence revealed that Esparza had been apprehended on several prior occasions in Varkonyi's presence.

3. Compare the wording in the first count with the pertinent portion of the statute.

**FIRST COUNT**
(18 U.S.C. § 111)
That on or about March 13, 1980, within the Western District of Texas, Defendant, THOMAS L. VARKONYI, forcibly assaulted, resisted, opposed, impeded, intimidated and interfered with Louis E. Barragan, while engaged in the performance of his official duties, in violation of Title 18, United States Code, Section 111.
**STATUTE**
§ 111. Assaulting, resisting, or impeding certain officers or employees
Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

law does not compel a ritual of words. *United States v. Purvis*, 580 F.2d 853, 857 (5th Cir. 1978), *cert. denied*, 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1979). The validity of an indictment is governed by practical, not technical considerations. *United States v. Goodman*, 605 F.2d 870, 885 (5th Cir. 1979); *United States v. Camp*, 541 F.2d 737, 740 (8th Cir. 1976). Accordingly, the appropriate test in this instance is not whether the indictment might have been drafted with more clarity, but whether it conforms to minimal constitutional standards. *United States v. Haas*, 583 F.2d 216, 219 (5th Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1788, 60 L.Ed.2d 240 (1979); *United States v. London*, 550 F.2d 206, 211 (5th Cir. 1977).

■ In the instant case, a plain reading of the indictment would have informed the defendant that he had been charged with assault and interference against a man, recognized by him on the day of the incident as a Border Patrol agent, who was engaged in the performance of his official duties, in violation of 18 U.S.C. § 111. The citation of this statute in the charge served the dual purpose of affirmatively showing federal jurisdiction as well as directing the reader to 18 U.S.C. § 1114, wherein, the reader would find a listing of the particular federal officers protected by the statute. This court has ruled that an indictment is sufficient if it fairly informs the defendant of the charge against which he must defend, and enables him to plead an acquittal or conviction in bar of future prosecutions. *United States v. Goodman, supra*, at 885. It is our opinion that the assault and interference charge fulfills the constitutional

requisites and is sufficiently certain to charge an offense. *See United States v. Mullens*, 583 F.2d 134, 141 (5th Cir. 1978).

■ Varkonyi additionally challenges the assault charge on the basis that it lacked specificity. This argument does not concern the failure to charge an offense and was therefore waived by his failure to raise it in the district court. *See United States v. Gerald*, 624 F.2d 1291, 1300 (5th Cir. 1980) (citing *United States v. Freeman*, 619 F.2d 1112, 1118 (5th Cir. 1980)); Fed.R.Crim.P. 12(b)(2), (f).

Varkonyi also challenges the sufficiency of the harboring counts, alleging that they are defective because the words "from detection" were omitted.[4] It is our opinion that this argument is frivolous because the omitted language neither adds to nor detracts from the overall import of the charge. Implicit in the wording "harbor, shield, or conceal", is the connotation that something is being hidden from detection, and, therefore, the absent wording was mere surplusage.

## II. Constitutionality of 18 U.S.C. § 111

■ While Varkonyi did not attack the constitutionality of this statute at the trial level, he contends on appeal that it is impermissibly vague and overbroad. He asserts that the statute lacks ascertainable standards of guilt so as to give reasonable notice of the proscribed conduct, and that the statute could be applied in some circumstances which contravene rights protected by the first amendment.

Addressing the vagueness issue, we find the purpose of 18 U.S.C. § 111 as twofold.

---

**4.** Compare the second count with the language of the statute.

As count three is identical, it is not necessary to include it in this comparison.

SECOND COUNT
(8 U.S.C. § 1324(a)(3))

That on or about March 13, 1980, in the Western District of Texas, THOMAS L. VARKONYI, wilfully and knowingly concealed, harbored, and shielded Oscar Esparza-Mancibais, an alien, in a building, which such alien had not been duly admitted by an immigration officer of the United States, and who was not lawfully entitled to enter and reside within the United

States, in violation of Title 8, United States Code, Section 1324(a)(3) (R. Vol. I, 5).

STATUTE

§ 1324. Bringing in and harboring certain aliens—Persons liable

(a) Any person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who—

(3) Willfully or knowingly conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, in any place, including any building or any means of transportation.

The statute was designed to protect both federal officers and federal functions. *United States v. Feola*, 420 U.S. 671, 679, 95 S.Ct. 1255, 1261, 43 L.Ed.2d 541 (1975). The Tenth Circuit has ruled that this federal assault statute is not unconstitutionally vague, but is sufficiently certain to give a person of ordinary intelligence fair notice that his contemplated activity is forbidden. *United States v. Linn*, 438 F.2d 456, 458 (10th Cir. 1971) (construing 18 U.S.C. § 111); *cf., United States v. Dupree*, 544 F.2d 1050, 1052 (9th Cir. 1976) (upholding a similar assault statute, 18 U.S.C. § 113). Being in substantial agreement with the decisions in the other circuits, we conclude that Section 111 meets the test of definiteness.

■ The second argument advanced by Varkonyi is that the statute is overbroad. Here, he contends that the statute may be enforced in such a fashion as to infringe on constitutionally protected rights. *Cf., Norwell v. Cincinnati*, 414 U.S. 14, 16, 94 S.Ct. 187, 188, 38 L.Ed.2d 170 (1973) (one cannot be punished for non-provocatively voicing an objection to the authority of a police officer). Nothing in this case suggests that Varkonyi was non-provocatively objecting to Barragan's authority, but instead, the facts reflect that his abusive language and physical conduct went beyond the exercise of constitutionally protected rights. As a result, Varkonyi lacks standing to test the constitutionality of this statute on the grounds that it impliedly might be unconstitutional if applied to other persons or other situations. *United States v. Raines*, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960). *See generally United States v. Wurzbach*, 280 U.S. 396, 50 S.Ct. 167, 74 L.Ed. 508 (1930).

### III. Constitutionality of 8 U.S.C. 1357(a)(3)

Varkonyi raises another issue of constitutionality concerning this statute's blanket authorization for warrantless entries onto private property, except dwellings, if the property is within twenty-five miles from an external boundary. *See* 8 U.S.C. § 1357(a)(3). Essentially, he contends that this type of entry violates the warrant clause of the Fourth Amendment. *See generally Almeida-Sanchez v. United States*, 413 U.S. 266, 273, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973); *United States v. Brignoni-Ponce*, 422 U.S. 873, 877–883, 95 S.Ct. 2574, 2578–2581, 45 L.Ed.2d 607 (1975). *See also Marshall v. Barlows, Inc.*, 436 U.S. 307, 311, 98 S.Ct. 1816, 1819, 56 L.Ed.2d 305 (1978) (warrant clause applied to commercial buildings). Assuming the foregoing to be true, Varkonyi argues that he was entirely justified in resisting the officers' entry, since they could not be in the performance of official duties, and thus, he did not violate 18 U.S.C. § 111.

■ While Varkonyi presents an interesting argument, we find that there are sufficient constitutional grounds to uphold the warrantless entry, without requiring a determination of constitutionality as to Section 1357(a)(3). The Supreme Court has ruled that law enforcement officers may enter upon private property to make warrantless arrests, provided the arrest is based on probable cause and the person is in "plain view". *United States v. Santana*, 427 U.S. 38, 42–43, 96 S.Ct. 2406, 2409–2410, 49 L.Ed.2d 300 (1976); *see Hester v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924). These cases recognize that under the common law one's dwelling and the yard around it are considered "private"; however, it is clear that cases interpreting the Fourth Amendment consider anything knowingly exposed to the public is not subject to its protection. Therefore, any area where there is no expectation of privacy is considered a "public place" under the Fourth Amendment. In *Santana* the Court went beyond permitting the warrantless entry into a "public place" to effect an arrest, and determined that a suspect may not defeat an otherwise proper arrest by retreating to a "private place". *United States v. Santana, supra*, 427 U.S. at 44, 96 S.Ct. at 2410.

■ In the instant case, we must make two determinations, to wit, whether the suspects were in a public place, and whether

the arrest was based on probable cause. Addressing the public place issue, the evidence reveals that the aliens were in plain view from the roadway when they were initially spotted by the INS officers. Other facts reflect that the men were working on a truck in the delivery area of the fenced yard, that the workers, even when they were attempting to hide, were clearly visible through the fence, and that the gate was open. Following the rationale announced in *Santana*, it is obvious that the aliens were in a "public place".

Concerning probable cause, the evidence adduced at trial established that when the workers noticed the approach of the INS van they shouted a warning, and then stopped working and sought cover to avoid detection. Pursuant to Section 1357(a)(2), officers of the INS are empowered to:

> "... arrest an alien in the United States, if he has *reason to believe* that the alien so arrested is in the United States in violation of any such law or regulation and is *likely to escape* before a warrant can be obtained for his arrest...." (emphasis added).

In *Illinois Migrant Council v. Pilloid*, 398 F.Supp. 882, 899 (N.D.Ill.1975), *affirmed*, 540 F.2d 1062 (1976), *modified*, 548 F.2d 715 (7th Cir. 1977), the court held that furtive conduct and flight, especially when the suspect is aware of the presence of the INS, may justify a reasonable suspicion that the person is unlawfully in the country. It is apparent from the articulable facts of this case, that the officers Barragan and Gomez had sufficient reason to believe that the men working in Varkonyi's yard were in the United States illegally. Since the phrase "reason to believe" has been equated with the constitutional requirement of probable cause, *see, e. g., United States v. Cantu*, 519 F.2d 494, 496 (7th Cir.), *cert. denied*, 423 U.S. 1035, 96 S.Ct. 569, 46 L.Ed.2d 409 (1975); *Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980); *Au Yi Lau v. INS*, 445 F.2d 217, 222 (D.C.Cir.1971), *cert. denied*, 404 U.S. 864, 92 S.Ct. 64, 30 L.Ed.2d 108 (1971), we find there is clearly a sufficient basis for the warrantless arrest.

We thus conclude that the warrantless entry and arrest in this case did not violate the warrant clause of the Fourth Amendment.

### IV. Sufficiency of the Evidence

■ Varkonyi challenges the sufficiency of the evidence on each of the counts. He properly moved for acquittal at the close of the evidence, and, therefore, the standard of review to be employed by this court is whether viewing the evidence most favorably to the government, reasonable minds could conclude that it is inconsistent with any hypothesis other than the defendant's guilt. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *accord, United States v. Kelley*, 630 F.2d 302, 303 (5th Cir. 1980). The nature of the evidence, whether direct or circumstantial, is immaterial, since we must accept all credibility choices which tend to support the jury's verdict. *United States v. Staller*, 616 F.2d 1284, 1292 (5th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980). Accordingly, only if we determine the jury must have had a reasonable doubt as to an essential element of the crime, must the verdict be overturned. *United States v. Forrest*, 620 F.2d 446, 450 (5th Cir. 1980).

■ As to the assault and interference charge, Varkonyi contends that his conduct should be excused because he believed that he was acting in a lawful manner. He asserts that the requisite willfulness was not proven, since he thought that he was engaged in the lawful exercise of his Fourth Amendment right to be free from unwarranted governmental intrusion on his private property. We find this position insupportable in fact or in law. In *United States v. Barnett*, 492 F.2d 790, 791 (5th Cir. 1974), this Circuit ruled that one who assaults a federal officer is not immune from liability even though the assault resulted from an attempt to protect one's property from trespassers, if the trespassers were officers engaged in the performance of their official duties. Varkonyi's reliance on *United States v. Young*, 464 F.2d 160, 163 (5th Cir. 1962) is misplaced since that case

excused an assault of a federal officer simply because the defendant thought he was threatened with an intentional tort by a private citizen. Here, the facts unequivocally established that Varkonyi knew he was confronting uniformed officers of the Border Patrol, and that he was informed they had authority to interrogate the aliens pursuant to 8 U.S.C. § 1357. Although *Norwell v. Cincinnati*, 414 U.S. 14, 16, 94 S.Ct. 187, 188, 38 L.Ed.2d 170 (1973), recognizes that one may inquire, to some extent, into an officer's authority to interfere with one's person or property, the privilege does not extend to the abusive language and physical acts of aggression present in the instant case.[5] Consequently, we find, with no reasonable doubt, that Varkonyi's conduct fell within that proscribed by the statute.

Concerning the harboring charge, Varkonyi argues that his conduct was not within that enjoined by the statute, 8 U.S.C. § 1324(a)(3), because he never shielded the aliens from detection. Instead, he maintains that all of his acts occurred after the aliens had been discovered. Further, he asserts that he had no knowledge that the workers were unlawfully in the United States. As a final matter, he raises the employment exemption in Section 1324(a), which provides that employment and occasional lodging as an incident of the employment does not constitute harboring.

Viewing the facts in a light most favorable to the government, we find the evidence contrary to Varkonyi's position. Section 1324(a)(3) proscribes any conduct which

tends to substantially facilitate an alien's remaining in the United States illegally. *United States v. Cantu*, 557 F.2d 1173, 1180 (5th Cir. 1977) (quoting *United States v. Lopez*, 521 F.2d 437, 441 (2d Cir.), *cert. denied*, 423 U.S. 995, 96 S.Ct. 421, 46 L.Ed.2d 368 (1975)), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1236, 55 L.Ed.2d 763 (1978), except employment per se. The evidence adduced at trial revealed that Varkonyi knew of the aliens undocumented status; that he had instructed the aliens on avoiding detection on a prior occasion; that he was providing the aliens with employment and lodging while they were unlawfully in the United States; that he had forcibly interfered with INS agents to protect the aliens from apprehension; and, that he was partly responsible for the subsequent escape of one alien in INS custody. As a result of the aforementioned acts, we find that there was sufficient evidence for the jury to determine that the defendant's conduct went beyond mere employment, and thus, constituted harboring.

As to the employment proviso in Section 1324(a),[6] its application is conditioned upon a showing that the employment practice in question is usual and normal to the industry generally, not just the employer's own practice. *See United States v. Herrera*, 584 F.2d 1137, 1144 (2d Cir. 1978); *United States v. Mount Fuji Japanese Steak House, Inc.*, 435 F.Supp. 1194, 1202 (E.D.N.Y.1977). The record reflects that Varkonyi failed to establish that his employment practices were usual and normal to the scrap metal industry, and this was sufficient to preclude

5. The record reveals two separate physical confrontations between Officer Barragan and the defendant Varkonyi. After asking the men to come out and talk with them, Barragan attempted to enter the yard through the open gate, at which time Varkonyi stopped him. Testimony adduced at trial showed that after Barragan identified himself as an INS officer, Varkonyi, yelled, cursed, pinned Barragan's arms to his side and forced him out of the yard. Record, vol. II, at 52, 62–67, 79, 85, 143; Record, vol. III, at 227–228, 252. The second altercation occurred after the aliens had surrendered and Barragan had informed Varkonyi that the men wished to change clothes, but in order to do so, it would be necessary for him to accompany them at all times. Barragan followed Varkonyi and the four aliens to the warehouse, however, upon reaching the warehouse, Varkonyi shoved Barragan aside and locked him out of the building. Record, vol. II, at 68–70, 86, 89, 129, 143; Record vol. III, 233–234, 256. It appears to this court that either of these two incidents would be sufficient to support the assault conviction.

6. 8 U.S.C. § 1324(a) in its pertinent part:

"Provided, however, that for the purposes of this section, employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring."

application of the exemption. Additionally, we note that extending this exemption to the defendant in this case would contravene the intent and purpose of the provisions, since it was designed to protect unwitting employers, which is certainly not the situation in this case. 98 Cong.Rec. 794 (1952) (remarks of Sen. Kilgore).

Since we find the evidence conclusive, beyond a reasonable doubt, that Varkonyi's conduct, both before and after detection, was calculated to facilitate the aliens remaining in the United States unlawfully, we hold that his alleged error is without merit.

## V. Jury Instructions

■ Varkonyi challenges the sufficiency of the charge given the jury in several respects; however, he failed to request an instruction or object to the instructions given as required by Rule 30. Consequently, on appeal, this court must look beyond the alleged erroneous instruction and search instead for "plain error". *United States v. Franklin,* 586 F.2d 560, 569 (5th Cir. 1978), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1536, 59 L.Ed.2d 789 (1979). Employing this standard of review, Varkonyi must demonstrate that the charge, considered as a whole is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice. *United States v. Bates,* 600 F.2d 505, 510 (5th Cir. 1979); *United States v. Franklin, supra,* at 569.

■ Concerning the assault and interference charge, Varkonyi alleges that the court only instructed the jury as to "assault", which was specifically defined, and the remainder of the charge was referred to only by incorporating the indictment. He maintains that the omission of definitions as to the other offenses constituted error. On the contrary, we find that the district court did not err in omitting definitions as to the related offenses. The charge specifically defined the word "assault" because it is a word of art, which carries with it certain legal ramifications, whereas, the other offenses alleged in the charge involved terms within the common understanding of a juror. Accordingly, we find no error in this instruction. *See United*

*States v. Johnson,* 575 F.2d 1347, 1357–1358 (5th Cir. 1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979).

Varkonyi raises another point of error regarding the court's instruction as to the employment exemption in 8 U.S.C. § 1324. After a careful review of the instruction with respect to the harboring charge, we find that the instruction to the jury did not deny him the benefit of the employment proviso. Instead, the instruction was aimed primarily at clarifying the conditions and terms associated with the border crossing card. Moreover, it was incumbent on Varkonyi to demonstrate that his practices were usual and normal in the industry, as a prerequisite to application of the exemption, and for him to request an instruction on this point; however, the record reflects that he neither introduced evidence on this point, nor requested an instruction. Therefore, we find no merit in his position.

Varkonyi's final challenge to the jury charge relates to the court's instruction as to the authority of INS officers to question, arrest, and search without a warrant. The court, in this instance, adopted the language of Sections 1357(a)(1), (a)(2) and (a)(3), instructing the jury that the agents must have had a "reason to believe" that the alien was unlawfully in the United States and that the alien is "likely to escape" before a warrant can be obtained. The effect of the wording of this instruction required the jury to determine that the officer's entry onto Varkonyi's property was based on "probable cause". Consequently, we find that the trial court was correct in instructing the jury that conduct which otherwise could constitute a trespass, was justifiable when the officer was in the performance of his duty.

All of Varkonyi's points on appeal having been considered and found to be without merit, we affirm the judgment of the district court.

AFFIRMED.