Joseph Wyatt WILLIS, Plaintiff,

v.

Don SIEGELMAN, et al., Defendants.

No. CIV.A.02–A–554–N.

United States District Court,
M.D. Alabama,
Northern Division.

March 3, 2004.

Joseph (Jay) Brady Lewis, The Law Office of Jay Lewis, Montgomery, AL, for Joseph Wyatt Willis, plaintiff.

Mose W. Stuart, IV, State of Alabama, Department of Finance, Legal Division, Montgomery, AL, for Don Siegelman,

Hon., P.C. Callahan, J.A. McClenney, James H. Alexander, defendants.

Neal P. Conner, Alabama Department of Public Safety, Montgomery, AL, for James H. Alexander.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This cause is before the court on a Motion for Summary Judgment filed by the Defendants Don Siegelman ("Siegelman") and P.C. Callahan ("Callahan") on December 9, 2003 (Doc. # 43) and a Motion to Reinstate Claims as Against J.A. McClenney ("McClenney") filed by the Plaintiff, Joseph Wyatt Willis ("Willis") on December 16, 2003 (Doc. # 46).[1] The Plaintiff, Joseph Wyatt Willis, originally filed a seven-count Complaint on May 15, 2002, bringing claims under 42 U.S.C. §§ 1983, 1985, 1986, and Alabama state law for various violations of his civil rights. The following counts remain at this point in the proceedings: Deprivation of the Right to Freedom of Speech and Association (Count One) against Siegelman and Callahan in their individual and official capacities, Deprivation of Equal Protection (Count Three) against Siegelman and Callahan in their individual and official capacities, and Unreasonable Force in Violation of the Fourth Amendment (Count Six) against Callahan in his individual and official capacities.[2]

For the reasons to be discussed, the Defendants' Motion for Summary Judgment is due to be DENIED and the Motion to Reinstate is due to be GRANTED.

### II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by

---

1. The court dismissed the claims against McClenney in its order dated May 13, 2003 (Doc. # 37).

2. In this motion, the Defendants do not appear to raise arguments as to why summary judgment is due to them in their official capacities. Further, it is not clear if the Plaintiff is continuing to assert his claims against the Defendants in their official capacities. As summary judgment based on the arguments presented in this motion is due to be denied at this time, the court will not address the claims against the Defendants in their official capacities.

[its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### III. *FACTS*

The submissions of the parties, viewed in the light most favorable to the nonmoving party, establish the following facts:

During early December 2001, the Plaintiff, Joseph Wyatt Willis, telephoned Defendant Don Siegelman, Governor of the State of Alabama, to complain that the official State Christmas Tree, located on the steps of the Alabama Capitol Building in Montgomery, did not have any Alabama State Flags flying along with the United States Flags. After voicing this complaint, an unnamed official in the Governor's office informed the Plaintiff that the tree looked fine and that his suggestion would be considered for next year's tree. Unsatisfied with this response, the Plaintiff appeared at the tree on December 17, 2001 with an Alabama State Flag. The Plaintiff peacefully displayed his flag as a way of protesting the flag's absence from the Christmas tree and declaring his loyalty to the State of Alabama. The Plaintiff conducted this protest on the steps of the Capitol in the same area where numerous other speeches, news conferences, and rallies have taken place over the years.

Plaintiff alleges that, at some point after the Plaintiff began his protest, Defendant P.C. Callahan, a Sergeant with the Alabama Capitol Police, informed the Plaintiff that Governor Siegelman had ordered that something be done about the Plaintiff. Callahan had been asked by J.A. McClenney to go to the Capitol to give instructions to Willis to move from in front of the tree onto the steps. Callahan commanded the Plaintiff to exit the steps of the Capitol and move to the street below. (Callahan states that he only asked the Plaintiff to move away from the tree and to go farther down the Capitol steps to continue his demonstration.) In response to this order, the Plaintiff stated that he wanted to display his flag at or near the tree in order to call public attention to the need to honor both the Alabama State Flag and the United States Flag. After the Plaintiff refused to move, Callahan arrested the Plaintiff for disorderly conduct.

Once in custody, the Capitol Police processed the Plaintiff at their headquarters. After processing the Plaintiff, the Capitol Police transported him to the Montgomery County Detention Facility where he was held for three hours and then released on bond. On April 29, 2002, the Circuit Court of Montgomery County dismissed the disorderly conduct charge pending against the Plaintiff upon a motion from the State.

Although Callahan was the only Defendant present at the time of the arrest, the Plaintiff contends that Governor Siegelman ordered that the Plaintiff's rights be "curtailed, abridged and violated by Callahan, McClenney, and the State Capitol Police." Complaint ¶ 31.

## IV. DISCUSSION

*Don Siegelman and the Reinstatement of Claims against J.A. McClenney*

Siegelman first argues that the Plaintiff cannot use the doctrine of respondeat superior to hold him liable in a § 1983 lawsuit for Callahan's allegedly unconstitutional actions. According to the Eleventh Circuit, "supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999) (internal quotations omitted). Rather, "[s]upervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.1990) (citations omitted). A causal connection can be established in several different ways. First, a supervisor is liable when a history of widespread abuse puts the supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so. *Braddy v. Fla. Dep't of Labor & Employment Sec.,* 133 F.3d 797, 802 (11th Cir.1998). Second, a supervisor is liable when a "custom or policy" results in "deliberate indifference to constitutional rights." *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir.1991). Third, a causal connection may be established by "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez v. Reno,* 325 F.3d 1228, 1235 (11th Cir.2003).

In the present case, Willis states that Callahan told him that Siegelman "had ordered that something be done about me and that I would have to move off the Capitol grounds to the sidewalk along Bainbridge Street." [3] Pl. Response to Mot. for Summ. J'ment ("Pl.'s Response"), Ex. 1 ("Willis Aff.") p. 2. The court realizes that the Defendants dispute this fact, however, the court may not weigh evidence or make credibility determinations when analyzing a motion for summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 135, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see also Johnson v. Governor of State of Florida,* 353 F.3d 1287, 1292 (11th Cir.2003). Therefore, Willis has alleged and supported with his own affidavit that Siegelman directed his subordinates to act unlawfully. Siegelman allegedly directed "something be done" about Willis and that Willis be moved off Capitol grounds, which would violate Willis's First Amendment rights. By so directing his subordinates, Siegelman may be subject to supervisor liability for his subordinates' actions. There exists a genuine issue of material fact as to whether Siegelman is liable for Callahan's actions. For these reasons, summary judgment as to Willis's claims against Siegelman is due to be DENIED at this time.

Willis has moved to reinstate Count I against McClenney due to the evidence presented in the Defendants' Motion for Summary Judgment. The court had previously dismissed Willis's claims against McClenney because Willis had failed to allege any causal connection between McClenney's actions and the alleged constitutional violations, and thus McClenney was not subject to supervisor liability. *See* Court Order dated May 13, 2003 (Doc.

---

**3.** In his Motion for Summary Judgment, Siegelman raises no hearsay objection to this evidence. Therefore, the court will not rule on the admissibility of this statement.

# 37). At the present time there exists evidence to show that McClenney dispatched Callahan to the Capitol steps to investigate the report that someone was standing near the tree partially blocking its view. Pl.'s Response, Ex. 3 ("McClenney Aff."), ¶ 4, Def.'s Response to Show Cause Order, McClenney Dep. 6:14–7:1. McClenney told Callahan to instruct whoever was near the tree to move from in front of the tree to the bottom of the steps in front of the Capitol. McClenney Aff. ¶ 4. Therefore, as was the case with Siegelman, McClenney directed Callahan to move Willis away from the tree, thus interfering with Willis's First Amendment rights. Accordingly, this evidence now tends to show the causal connection between McClenney's action and the alleged violation of Willis's constitutional rights needed to allege supervisor liability. By so directing his subordinate, McClenney may be subject to supervisor liability for his subordinate's actions. For these reasons, the Plaintiff's Motion to Reinstate Claims Against J.A. McClenney is due to be GRANTED at this time. The Plaintiff is instructed to amend his Count I of his complaint to properly plead a Deprivation of the Right to Freedom of Speech and Association claim against McClenney through a theory of supervisor liability. The Plaintiff has until March 8, 2004 to file the Amended Complaint. McClenney will be given until March 15, 2004 to file a Motion for Summary Judgment as to the count brought against him in the Amended Complaint, if he chooses to do so.

## P.C. Callahan

 Callahan argues that he is entitled to qualified immunity on all of Willis's claims. As discussed in the court's May 13, 2003 order, the Eleventh Circuit explained that when a police officer has probable cause to believe that a person is committing a particular public offense, the officer may lawfully arrest that person, even though the offender is engaged in protected First Amendment activity. *Redd v. City of Enterprise*, 140 F.3d 1378, 1383 (11th Cir.1998); *see also Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir.2002) ("[T]he existence of probable cause to arrest [the plaintiff] defeats her First Amendment claim."). As a result of this holding, the Plaintiff's First Amendment claim hinges on the legality of his arrest under the Fourth Amendment. Therefore, although there is no claim for unlawful arrest in the Complaint, the court will initially address whether Callahan is entitled to qualified immunity for his arrest of Willis on the date in question. If Callahan is entitled to qualified immunity for the arrest, then the Plaintiff's First Amendment claim must fail. *Redd*, 140 F.3d at 1384 ("[W]hen an officer has *arguable* probable cause to believe that a person is committing a particular public offense, he is entitled to qualified immunity from suit, even if the offender may be speaking at the time that he is arrested."). However, if qualified immunity is not warranted, only then will the court address whether the arrest violated the Plaintiff's First Amendment rights.

In order to receive qualified immunity, a public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir.2002) (internal quotation marks omitted). In this case, the Plaintiff contends that Callahan unlawfully arrested him, and there is no contention that Callahan did not act within his discretionary duties.

Next, the burden shifts to the plaintiff to prove that qualified immunity is not warranted. *Id.* The Supreme Court has articulated a two-prong test to aid in this analysis. *Vinyard v. Wilson*, 311 F.3d 1340,

1347 (11th Cir.2002). First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Second, if a constitutional right "would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" *Vinyard,* 311 F.3d at 1347 (quoting *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151). Employing this standard, the court will first consider whether the Defendant is entitled to qualified immunity as to the Plaintiff's claim of unlawful arrest.

■ In the context of a wrongful arrest claim, an officer will be protected by qualified immunity if he had "arguable probable cause" to effectuate the arrest.[4] *Scarbrough v. Myles,* 245 F.3d 1299, 1302 (11th Cir.2001). Arguable probable cause exists when reasonable police officers, in the same circumstances and possessing the same knowledge as Sergeant Callahan could have believed there was probable cause to make a warrantless arrest. *Lee,* 284 F.3d at 1195. This inquiry is objective, and the court must ask whether the officer's actions were objectively reasonable regardless of the officer's underlying motivation or intent. *Montoute v. Carr,* 114 F.3d 181, 183 (11th Cir.1997).

■ Callahan points to his own affidavits and the complaint filed in the District Court of Montgomery County to show that he had arguable probable cause to arrest Willis for disorderly conduct. Def.'s Brief in Support of Mot. for Summ. J'ment, Ex. 1–B and 1–C. Callahan does not offer evidence, however, which amounts to arguable probable cause. He does not provide

evidence that the Plaintiff behaved violently, made unreasonable noise, used obscene language, or disturbed a lawful assembly. *See Ala. Code* § 13A–11–7. Callahan does point to the complaint in exhibit 1–C, which states that Willis was blocking pedestrian traffic, specifically Officer R. Lee Brothers. The Plaintiff denies this allegation. In his affidavit, Willis states that he set up near the Christmas tree with his flag. Willis Aff. p. 1. He goes on to say, "I was holding the pole to which the flag was attached in a safe manner. I was in no way endangering the Christmas tree or its decoration. I was not impeding either pedestrian or vehicular traffic." *Id.*

The court must draw all reasonable inferences in favor of the non-moving party. *See Reeves,* 530 U.S. at 135, 120 S.Ct. 2097; *see also Johnson,* 353 F.3d 1287, 1292. As the two parties' accounts differ as to what occurred on the day in question, the court must give credence to the version offered by Willis as the non-moving party. *See Webb v. Ethridge,* 849 F.2d 546, 549–50 (11th Cir.1988). Thus, at this point in the proceedings, the court concludes that under that version Callahan did not have arguable probable cause to arrest the Plaintiff for disorderly conduct.

■ The next step in the qualified immunity analysis is to determine whether the Plaintiff's right to be free from an unlawful arrest in the absence of probable cause under the circumstances was "clearly established" at the time of the incident. As discussed in the court's May 13, 2003 opinion, the present case falls into the "obvious clarity" category of cases, as the evidence presented by the Plaintiff would not give a reasonable officer any indication that the Plaintiff's actions even remotely approached the disorderly conduct level.

---

4. Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity analysis. *See, e.g.,*

*Gold v. City of Miami,* 121 F.3d 1442, 1445 (11th Cir.1997).

Because looking at the evidence in the light most favorable to Willis, his conduct was entirely lawful,[5] and an arrest for disorderly conduct under these circumstances is so far beyond the "hazy border" between lawful and unlawful conduct that a finding of qualified immunity is not appropriate.

■ Having made the determination that Callahan is not entitled to qualified immunity related to his arrest of Willis, Callahan is not entitled to summary judgment on Count One. There exist issues of fact as to the Plaintiff's allegations of a violation of his First Amendment rights. Callahan, in his Motion for Summary Judgment, offers no evidence or argument that Willis's First Amendment rights were not violated. Therefore, summary judgment as to Count One is due to be DENIED.

■ As to Count Six, Unreasonable Force in Violation of the Fourth Amendment, again Callahan is not entitled to qualified immunity because, accepting Willis's version of the facts, the force was used during the course of an unlawful arrest. The arrest was made without probable cause and thus any use of force would be considered unreasonable. *See Sheth v. Webster,* 145 F.3d 1231, 1238 (11th Cir. 1998) (holding that when an arrest is made without probable cause and there is no justification for the officer's use of force, "application of the Fourth Amendment reasonableness standard would inevitably lead every reasonable officer ... to conclude that the force was unlawful"); *see*

also *Nolin v. Isbell,* 207 F.3d 1253, 1258 (11th Cir.2000) (stating that *Sheth* involved an arrest "without probable cause in which any use of force was inappropriate"). Additionally, Callahan does not offer any evidence or argument that he did not use unreasonable force in Willis's arrest. Therefore, Callahan's Motion for Summary Judgment as to Count Six is due to be DENIED.

Finally, as to Count Three, Deprivation of Equal Protection, Callahan offers no evidence or argument as to why he is entitled to qualified immunity or summary judgment. Therefore, Callahan's Motion for Summary Judgment is due to be DENIED as to Count Three. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

## V. CONCLUSION

For the reasons stated above, the Defendants' Motion for Summary Judgment is due to be and is hereby ORDERED DENIED.

For the reasons stated above, the Plaintiff's Motion to Reinstate Claims as Against J.A. McClenney is due to be and hereby ORDERED GRANTED as to Count I of the original Complaint. The Plaintiff has until March 8, 2004 to file an Amended Complaint, properly alleging a Deprivation of the Right to Freedom of Speech and Association (Count I) against McClenney as Callahan's supervisor. If the Plaintiff files the Amended Complaint, McClenney will have until March 15, 2004

---

5. Even assuming that the Plaintiff protested Callahan's order to move his demonstration to the sidewalk, the Supreme Court has recognized that this type of conduct is lawful. *See City of Houston v. Hill,* 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (stating that "the First Amendment protects a significant amount of verbal criticism and

challenge directed at police officers"); *Norwell v. City of Cincinnati,* 414 U.S. 14, 16, 94 S.Ct. 187, 38 L.Ed.2d 170 (1973) (per curiam) ("Surely, one is not to be punished for non-provocatively voicing his objection to what he obviously felt was a highly questionable detention by a police officer.").

to file a Motion for Summary Judgment as to this claim.