**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 200355-U

Order filed April 27, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0355 Circuit No. 20-CM-446 |
| | ) | |
| ISMAEL E. VASQUEZ, | ) ) | Honorable Clark E. Erickson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Justices McDade and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  Defendant's statements to a school principal were constitutionally protected speech requiring reversal of his disorderly conduct conviction. The circuit court violated defendant's rights to a sentencing hearing.

¶ 2     Defendant, Ismael E. Vasquez, appeals from his disorderly conduct convictions and sentences. Defendant argues he was wrongfully prosecuted for uttering constitutionally protected speech and the Kankakee County circuit court violated his rights to a sentencing hearing. We reverse in part, vacate in part and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4          Defendant was charged with two counts of disorderly conduct (720 ILCS 5/26-1(a)(1) (West 2020)). Relevant to this appeal, count II alleged "defendant approached the Principle [*sic*] of Bourbonnais Upper Grade center, Shannon Swilley, and confronted him about being banned from the property and was verbally abusive to *** Swilley in an unreasonable manner as to alarm or disturb *** Swilley, and to provoke a breach of the peace." Defendant proceeded to a bench trial as a self-represented litigant.

¶ 5          Swilley testified that on August 4, 2020, he encountered defendant speaking with the school secretary. The conversation did not sound like a normal parent/secretary conversation, so Swilley came out of his office to assist. Defendant said to Swilley that he had been banned from the football field that was located on the school grounds. Defendant explained that he was not filming girls but was making an Instagram post. Swilley explained to defendant that he did not know anything about what happened at the football field. Defendant did not have any association with the school.

¶ 6          On cross-examination, Swilley testified he informed defendant that the renters of the school's football field had the right to decide whether defendant could come to the football field. Swilley explained he needed to discuss with the renters why they were excluding defendant from the field.

¶ 7          Defendant became agitated, started raising his voice, and began calling Swilley names. Swilley asked defendant to follow him outside. Outside of the building, defendant became more agitated and called Swilley a "[d]umb motherfucker" and "stupid as fuck." Swilley told defendant he was not welcome back to the school. Swilley then went inside and locked the doors because he

2

was concerned defendant would do something and was alarmed by defendant's unprovoked, unnecessary activity.

¶ 8        Defendant testified that he went to the school to get his access to the football field restored. Defendant was speaking with the school secretary when Swilley joined the conversation and they "had a little debate." Defendant stated "I started sowing my oats, he started sowing his oats, whatever right? Because he was a bigger guy, right?" Defendant and Swilley engaged in an argument, so Swilley asked defendant to step outside. The argument continued outside, and defendant offered Swilley his phone as evidence that he was not stalking children. Swilley did not take his phone. Defendant admitted to cursing at Swilley because he was upset, and he handled the situation that way because he is confrontational.

¶ 9        The circuit court found defendant guilty of both counts. The court immediately sentenced defendant, without conducting a sentencing hearing, to 30 days' incarceration on both counts with credit for time served. Defendant appeals.

¶ 10                                II. ANALYSIS

¶ 11                              A. First Amendment

¶ 12        Defendant argues the expletives he directed at Swilley were constitutionally protected speech as opposed to prosecutable utterances under the disorderly conduct statute. Defendant concedes that he did not preserve this issue for appellate review but argues the error requires reversal of his disorderly conduct conviction imposed on count II under the second prong of the plain error doctrine "in the interest of preserving his fundamental right to free speech."

> "[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant,

3

regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The initial step in the plain error doctrine is to determine whether a clear or obvious error occurred. *Id.* "In determining whether there was error here, our standard of review is *de novo*." *People v. Downs*, 2015 IL 117934, ¶ 15.

¶ 13        "The constitutional guarantees of freedom of speech forbid the States to punish the use of words or language not within 'narrowly limited classes of speech.' " *Gooding v. Wilson*, 405 U.S. 518, 521-22 (1972) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942)); U.S. Const., amend. I. In *Norwell v. City of Cincinnati, Ohio*, 414 U.S. 14, 16 (1973), the Supreme Court held that one is not to be punished merely because they verbally and negatively protested their treatment to a state actor. But the Court noted that had there been abusive language or fighting words, the case would have been decided differently. *Id.* (citing *Chaplinsky*, 315 U.S. at 569). "Fighting words are personally abusive epithets which, when addressed to an ordinary citizen, as a matter of common knowledge, inflict injury or are inherently likely to provoke an immediate breach of the peace." *People v. Redwood*, 335 Ill. App. 3d 189, 192 (2002).

¶ 14        The profane and heated language used by defendant did not constitute fighting words. See *Wood v. Eubanks*, 25 F. 4th 414, 423-25 (6th Cir. 2022) (defendant calling police "fucking thugs," "motherfuckers," "bitch ass fucking pigs," "dirty rat bastards," and "pussies with badges" were not fighting words); *State v. Baccala*, 163 A.3d 1, 4 (Conn. 2017) (defendant calling a store manager "fat ugly bitch" and "cunt" and telling her "fuck you" were not fighting words); *In re Louise C.*, 3 P.3d 1004, 1005 (Ariz. Ct. App. 1999) (student yelling "fuck this" and "fuck you" to

4

the principal were not fighting words as required to establish disorderly conduct). Accordingly, defendant's words are not punishable speech. Nevertheless, the State charged defendant with disorderly conduct in that he knowingly did an act in such an unreasonable manner as to alarm or disturb another and to provoke a breach of the peace. 720 ILCS 5/26-1(a)(1) (West 2020). To constitute a breach of the peace, defendant's verbal statements must "threaten another or have an effect on the surrounding crowd." *People v. McLennon*, 2011 IL App (2d) 091299, ¶ 31. "[V]ulgarities and epithets" alone are insufficient to establish disorderly conduct. *Redwood*, 335 Ill. App. 3d at 193.

¶ 15        While defendant used inappropriate and vulgar language, it did not amount to a threat. Additionally, defendant's conduct did not have an effect on a surrounding crowd since he and Swilley's conversation took place briefly in front of the school secretary, and then privately outside. There is no indication in the record that any other individuals were around at the time that defendant made his profane comments outside of the school. Given our prior finding that defendant's language was not punishable speech, the court committed a clear error by convicting and sentencing defendant for a charge that derived from his use of constitutionally protected speech. See *Norwell*, 414 U.S. at 16.

¶ 16        Having found a clear or obvious error, we must next determine whether this otherwise forfeited error is reversible under the second prong of plain error review. Our supreme court has equated second-prong plain error with structural error. *People v. Moon*, 2022 IL 125959, ¶ 28. Structural errors render a criminal trial fundamentally unfair. *Id.*

¶ 17        In this case, it was fundamentally unfair for defendant to be convicted of a criminal offense for exercising his constitutional right to free speech. See *Norwell*, 414 U.S. at 16. Accordingly, we

reverse defendant's disorderly conduct conviction entered on count II. See *Moon*, 2022 IL 125959, ¶ 28.

¶ 18                                    B. Sentencing Hearing

¶ 19        Defendant argues the circuit court violated his rights to a sentencing hearing when it imposed a sentence immediately after finding the defendant guilty of the two charged offenses. The State confesses error.

¶ 20        Section 5-4-1 of the Unified Code of Corrections requires that a court hold a sentencing hearing after a determination of guilt. 730 ILCS 5/5-4-1(a) (West 2020). Defendants are allowed a "reasonable time to prepare for a hearing in aggravation and mitigation." *People v. La Rocco*, 123 Ill. App. 2d 123, 128 (1970). Additionally, "[d]efendant[s] should not be deprived of a reasonable opportunity to have a hearing in aggravation and mitigation or to waive such hearing." *People v. Williams*, 16 Ill. App. 3d 146, 149 (1973).

¶ 21        Upon review of the record and applicable law, we accept the State's confession of error. Here, the court sentenced defendant immediately after finding defendant guilty of the charged offenses, and without allowing either party to present evidence in mitigation or aggravation. This procedure violated defendant's right to a sentencing hearing and right to have time to reasonably prepare for that hearing. Accordingly, we vacate defendant's sentence and remand with directions for the court to conduct a sentencing hearing on the conviction entered on count I.

¶ 22                                    III. CONCLUSION

¶ 23        The judgment of the circuit court of Kankakee County is reversed in part, vacated in part, and remanded with directions.

¶ 24        Reversed in part; vacated in part.

¶ 25        Cause remanded with directions.