# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-40836

United States Court of Appeals
Fifth Circuit

**FILED**
August 16, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

DAVID ALLEN ANDERTON,

      Defendant - Appellant

Appeals from the United States District Court
for the Eastern District of Texas

Before JOLLY, JONES, and HAYNES, Circuit Judges

EDITH H. JONES, Circuit Judge:

David Anderton was convicted of making a false statement in an immigration document in violation of 18 U.S.C. § 1546(a) (Count 1); conspiracy to encourage and induce an illegal alien to reside in the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Count 2); and encouraging an illegal alien to reside in the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) (Counts 3-6). On appeal, he challenges (1) the constitutionality of 8 U.S.C. § 1324(a)(1)(A)(iv) and his conviction thereunder; (2) whether the indictment should have been dismissed for failure to state an offense; (3) the sufficiency of the evidence to sustain a conviction for Count One; (4) the

No. 17-40836

constitutionality of some of the search warrants; and (5) the final order of forfeiture for the property on 2949 West Audie Murphy Parkway. For the reasons given below, we AFFIRM.

## BACKGROUND

Anderton was president of A&A Landscape and Irrigation GP ("A&A"), a company operating around the greater Dallas, Texas area. In December 2011, Anderton signed a Form I-129 (Petition for a Nonimmigrant Worker) for A&A, stating that the job would not involve overtime and the visa workers would be paid "the highest of the most recent prevailing wage that is or will be issued by the Department [of Labor]." The "prevailing wage" hourly rate at the time was $8.16 to $11.16 or $12.24 for overtime. Anderton signed this document under the penalty of perjury.

In 2016, Anderton was charged with violating 18 U.S.C. § 1546(a) (Count 1), 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Count 2), and 8 U.S.C. § 1324(a)(1)(A)(iv) (Counts 3-6). Anderton moved to dismiss Count One for failure to state an offense. He also moved to dismiss Counts Two-Six, arguing that "reckless disregard" is a constitutionally deficient scienter. The court denied both motions. Anderton also moved to suppress evidence that was obtained under search warrants he argued were unconstitutional general warrants. The court denied this motion.

At trial, three visa workers testified that they worked overtime and were not paid more for overtime. Two testified that Anderton withheld $1,000 of their pay for "visa expenses" and one stated that Anderton withheld this amount from other visa workers as well. They also testified that Anderton withheld some of their pay for rent. All were paid far less than time and a half for their overtime and two claimed to have been paid less than minimum wage. They testified that they were paid for regular time by check and overtime with

2

cash.  Timesheets for these three workers reflected substantial amounts of overtime.

The former vice president of operations for A&A, Anthony Diesch, confirmed that workers were paid in part by check and in part by cash. Further, Anderton instructed that workers who "had papers" were to be paid partially by check, but other workers would be paid only in cash.  According to Diesch's records, one employee was paid as little as $5.50 an hour in 2008.  In October 2008, Anderton reported to Diesch there was some "heat" regarding payroll and they needed to get rid of the payroll spreadsheets.  Anderton also explained that money was withheld from visa workers' pay to reimburse A&A for visa expenses.

Diesch described Anderton's system of writing checks to "Refugio Rivera," which he would cash for currency to pay the workers.  Leslie Ducharme, a former employee, testified that Anderton told her to create false invoices, which were drafted after the checks had been written and purportedly covered tree purchases.  Anderton directed Diesch that the checks must be written for less than $10,000 because he believed the IRS would flag checks over that amount.

Blanca Lenal, another government witness and previous A&A employee, testified that Anderton would ask workers during job interviews whether they had legal documents.  If they lacked legal documentation, he would tell them they would get paid cash at a rate less than minimum wage.  According to Ducharme, when the Social Security Administration informed A&A that the names on employee W-2s did not match the social security numbers A&A had provided, Anderton advised his managers to take the employees off payroll, and  "[t]hey'll have a different I.D. at another time."  A few weeks later, such workers would have a new social security number.

3

No. 17-40836

The government presented testimony from four A&A employees who admitted being in the U.S. illegally.  Two of these workers stated that Anderton told them to go back to Mexico and get work visas.  When they could not obtain visas, they so informed Anderton, but he employed them anyway.  Finally, social security records were admitted in evidence, demonstrating that "of 375 names and corresponding social security numbers gleaned from A&A records, only 128 of the names and numbers matched and 37 of the employee names had no social security number."

The jury convicted Anderton on all counts.  After the criminal trial, the jury convened to hear a forfeiture motion and found that the company's property at 2949 West Audie Murphy Parkway was used to facilitate all six counts of the offenses.  Over Anderton's repeated objections, the district court granted the final order of forfeiture covering this property.

Anderton moved unsuccessfully for acquittal and for a new trial.  The court sentenced him to five years' probation, a $60,000 fine ($10,000 per count), and restitution exceeding $19,000.

Anderton timely appealed.

## STANDARDS OF REVIEW

This court reviews preserved challenges to the sufficiency of an indictment de novo.  *United States v. Grant*, 850 F.3d 209, 214 (5th Cir. 2017).  If a defendant fails to preserve an issue in the district court, this court will review the objection for plain error.  *United States v. Fairley*, 880 F.3d 198, 206 (5th Cir. 2018).  Plain error "requires that there was (1) error, (2) that is plain, and (3) that affects substantial rights."  *Id.* (citation omitted).  Courts "should correct a forfeited plain error that affects substantial rights if the error seriously affects the fairness, integrity or public reputation of judicial proceedings."  *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906 (2018) (citations and quotation marks omitted).

No. 17-40836

If a defendant preserves a sufficiency of the evidence claim, it is reviewed de novo but "with substantial deference to the jury verdict." *United States v. Suarez*, 879 F.3d 626, 630 (5th Cir. 2018) (citation omitted).  This court affirms convictions "if a reasonable trier of fact could conclude . . . the elements of the offense were established beyond a reasonable doubt." *Id.* (citation omitted).

"Factual findings in a ruling on a motion to suppress are reviewed for clear error" and questions of law are reviewed de novo.  *United States v. Moore*, 805 F.3d 590, 593 (5th Cir. 2015).  Furthermore, the "evidence is viewed in the light most favorable to the prevailing party." *Id.*

## DISCUSSION

### I.  Counts Two-Six

#### (a) Challenges to Section 1324(a)(1)(A)(iv), (v)

Pursuant to 8 U.S.C. § 1324(a)(1)(A)(iv), it is illegal to "encourage[] or induce[] an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such . . . residence is or will be in violation of law."   Subsection (v) criminalizes conspiracy to that end.  Anderton argues that this statute is unconstitutionally vague as applied to him for several reasons.  He contends that the terms "encourage" and "induce" are so broad as to have no discernible parameters and may include many activities, such as engaging in charitable or educational relationships with illegal aliens, that are not inherently illegal.  He asserts that making such conduct a felony offense under a mens rea of reckless disregard of other persons' illegal presence exacerbates the vagueness, particularly because various statutes and regulations strictly limit an employer's ability to question the immigration status of new or existing hires.  Finally, he likens his situation to cases in which other provisions of Section 1324 have been construed to require the defendant's active concealment of illegal aliens' status.  *See, e.g., United States v. Varkonyi*,

645 F.2d 453, 459 (5th Cir. 1981) (illegal harboring does not include "mere employment"); *DelRio Mocci v. Connolly Props. Inc.*, 672 F.3d 241, 247 (3d Cir. 2012) ("knowingly renting an apartment to an alien lacking lawful immigration status" does not constitute illegal harboring).  We discuss each of these propositions in turn.

As to vagueness,  Justice Scalia summed up, "[o]ur cases establish that the Government violates this guarantee [of the Due Process clause] by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357-58, 103 S. Ct. 1855, 1858 (1983)).  This court is concerned that the instant statutes of conviction, Sections 1324 (a)(1)(A)(iv) and (v), are extremely broad and the consequences of a felony conviction are harsh.  Whether these terms are unconstitutionally vague is another matter.  Courts must indulge a presumption of constitutionality and carefully examine a statute before finding it unconstitutional.  *Skilling v. United States*, 561 U.S. 358, 405-06, 130 S. Ct. 2896, 2929-30 (2010).

Anderton acknowledges, moreover, that he did not assert the vagueness of "encourage" and "induce" in the district court.  Consequently, our appellate review is confined to "plain error," the standards of which are noted above.  In the absence of relevant circuit precedent, Anderton relies on general principles and cites no similar case law concerning the vagueness doctrine to demonstrate error that was or is "plain."  The lack of legal authority "is often dispositive in the plain-error context." *United States v. Gonzalez*, 792 F.3d 534, 538 (5th Cir. 2015).  In fact, our sister circuit has affirmed convictions under these statutes where the defendants were employers of multiple illegal aliens. *United States*

*v. Khanani*, 502 F.3d 1281 (11th Cir. 2007).  Given this background, it would be difficult to find plain error.

Looking to the statutory language, we are strongly inclined to conclude that "encourage" and "induce" are sufficiently clear to provide fair notice to the public and guide law enforcement.  The district court instructed the jury succinctly that "[e]ncourage means to knowingly instigate, help or advise.  Induce means to knowingly bring about, to effect or cause or to influence an act or course of conduct."  *See United States v. He*, 245 F.3d 954, 957 (7th Cir. 2001).  The instructions respond to Anderton's complaint that this aspect of Section 1324(a)(1)(A)(iv) fails to require purposeful conduct.

The Third Circuit discussed these terms in the course of rejecting a RICO claim based on an apartment owner's having rented to illegal aliens.  *DelRio-Mocci*, 672 F.3d at 248-50.  The court reached a narrower interpretation than the acts of offering mere "help" or "advice" to aliens, terms included in the district court's instructions here.  As the Third Circuit would have it, dictionary definitions provide that "encourage" and "induce" imply conduct "incit[ing] aliens to remain in this country unlawfully when they would otherwise not have done so."  *Id.* at 250.  Anderton urges this court to adopt that interpretation.  For two reasons, we need not do so.  First, the Third Circuit acknowledged that cases using "help" and "advise" to expound the statutory provision had actually involved far more activity in support of illegal aliens' entering or remaining in the U.S.  *Id.*  Second, Anderton's conduct, in employing illegal aliens over a period of years with persistent disregard for federal immigration law, plainly exerted influence on the aliens' decisions to remain here illegally in the U.S.  Thus, this was not a case of episodic or humanitarian aid, which could give rise to vagueness issues on an as-applied basis.  A facial attack on a non-First Amendment statute can prevail only if the statute is unconstitutional in all applications or lacks any "plainly

7

legitimate sweep." *United States v. Stevens,* 559 U.S. 460, 472, 130 S. Ct. 1577, 1587 (2010) (citations omitted).

As for the requirement that a defendant exhibit "reckless disregard" that an alien's residence in the U.S. will be illegal, the government points out that recklessness is a common mens rea feature in criminal law generally and in several provisions of Section 1324 itself. *See* 8 U.S.C. §§ 1324(a)(1)(A)(ii), (iii), (iv), and 1324(a)(1)(C)(2). Courts are bound to "follow Congress' intent as to the required level of mental culpability for any particular offense." *United States v. Bailey*, 444 U.S. 394, 406, 100 S. Ct. 624, 632 (1980). This court has previously affirmed use of the reckless disregard standard in immigration prosecutions. *See, e.g., United States v. Nolasco-Rosas*, 286 F.3d 762, 765 (5th Cir. 2002) (discussing Section 1324(a)(1)(A)(ii) (alien transportation)); *see also United States v. Dominguez*, 661 F.3d 1051, 1063-64 (11th Cir. 2011) (citing Section 1324(a)(2) (smuggling aliens)); *Khanani*, 502 F.3d at 1286-87 (discussing 1324(a)(1)(A)(iii) and (iv)).

Anderton also analogizes his conduct to cases signaling that "mere renting" to illegal aliens or "mere employment" alone cannot establish illegal immigration conduct. *See, e.g., Villas at Parkside Partners v. City of Farmers Branch,* 726 F.3d 524, 529-30 (5th Cir. 2013) (en banc) (furnishing housing without more is not illegal "harboring" under Section 1324(a)); *Varkonyi,* 645 F.2d at 459 (harboring does not include "mere employment"); *DelRio-Mocci,* 672 F.3d at 248-50 (mere apartment rentals to illegal aliens did not violate Section 1324(a)(1)(A)(iv)). However, as pointed out by our sister circuit, when the elements of Section 1324(a)(1)(A)(iv) are properly stated to the jury, they require "a level of knowledge and intent beyond the mere employment of illegal aliens." *Khanani,* 502 F.3d at 1289.

In sum, Anderton's threshold challenges to the statute of conviction fail to establish reversible error.

No. 17-40836

**(b) Sufficiency of the Evidence**

Counts Three to Six of the indictment alleged Anderton, "for the purpose of commercial advantage and private personal gain, encouraged and induced [four identified] illegal aliens to reside in the United States, knowing and in reckless disregard of the fact that such residence would be in violation of the law." Anderton argues that these allegations fail to establish a violation of the law. The facts proven at trial contradict this contention.

Initially, Anderton argues that he could not have *caused* aliens to reside in the United States if they were already here. This is a red herring; the government was not required to prove that Anderton caused illegal aliens to *enter* the United States. The statute alternatively criminalizes encouragement to "reside" here, and that is what was shown at trial. Anderton continues, however, that merely residing in the United States as an illegal alien is not a crime, hence, he could not have induced or encouraged residence that would be "in violation of the law" (citing *Arizona v. United States*, 567 U.S. 387, 407, 132 S. Ct. 2492, 2505 (2012)). This, too, is wrong. This court has recognized that "[a]lthough '[a]s a general rule, it is not a crime for a removable alien to remain present in the United States,' it is a civil offense." *Texas v. United States*, 787 F.3d 733, 757 n.62 (2015) (quoting *Arizona*, 567 U.S. at 407, 132 S. Ct. at 2505). Aliens who reside here without authorization are "in violation of law" for purposes of Sections 1324(a)(1)(A)(iv) and (v).

Anderton principally contends that the statutory framework and case law establish that mere employment of illegal aliens is not a felony. Specifically, he points to 8 U.S.C. § 1324a(a)(1)(A) and (2), which are misdemeanor offenses that explicitly prohibit the knowing hiring or continued employment of aliens who are unauthorized with respect to such employment. The misdemeanor provisions can be distinguished from the convictions at issue here by the requirements of "inducing" and "encouraging" aliens to reside

9

illegally in the United States;  criminalizing "knowing employment" lacks the concepts of instigation and influence embodied in the felony offense.  In any event, the existence of a lesser grade of offense does not prevent the government from charging the more serious offense where the facts justify it.

The government recites the evidence that went well beyond Anderton's "mere employment" of illegal aliens.  Summarizing this evidence, the government showed that "Anderton knew that most of his workers [were] not lawfully present and that he worked with others at A&A to employ them, anyway; that he took advantage of their illegal status; that he rented or facilitated rental of living space to some of them; and that he assisted some in attaining public benefits."  Despite Anderton's possible exploitation of the undocumented workers, the totality of his conduct persistently and knowingly provided inducements and encouragements to the employees to reside in the United States.  Legally sufficient evidence supports the convictions.

## II. Count One False Statement Offense

Count One charged Anderton with making a false statement in an immigration document in violation of 18 U.S.C. § 1546(a) because he stated in the December 2011 I-129 petition that he would pay visa workers $8.16 to $11.16 an hour for regular work and $12.24 an hour for overtime when "he knew" he would pay the workers substantially less.

Anderton argues the truth or falsity of his statements depended on future events, that is, whether he would in fact pay his workers according to legal requirements.  Therefore, he contends, the indictment impermissibly charged a crime of "pure intent."  This court rejected a similar argument in *United States v. Shah*, a false statement case under 18 U.S.C. § 1001.  44 F.3d 285 (5th Cir. 1995).  *Shah* held that "a promise may amount to a 'false, fictitious or fraudulent' statement if it is made without any present intention of performance and under circumstances such that it plainly, albeit implicitly,

represents the present existence of an intent [not] to perform." *Id.* at 294. The district court did not err when it held that Count One stated an offense because "a person's statement that he intends to do something when he has no present intention of doing it is a false statement of existing fact." *See Shah*, 44 F.3d at 293.

Anderton also challenges the sufficiency of evidence to support this count, arguing that the evidence did not show his intent to underpay visa workers when he signed the I-129 petition. He charges that the government presented testimony from only three visa workers and improperly extrapolated that A&A's visa workers generally were underpaid. Anderton criticizes the government for not presenting certain kinds of evidence (for example, payroll tax records) or a forensic accounting analysis to prove systematic underpayments. In contrast, Anderton introduced a forensic accounting analysis purportedly refuting the government's position. Anderton also offered evidence that visa workers were paid better than prevailing wage rates and that a year-long Department of Labor investigation concluded with no action.

In addition to testimony from three visa workers, the government introduced A&A time sheet records for visa workers as well as evidence that he systematically underpaid non-visa workers. When the district court denied Anderton's motion for acquittal, it held that the "evidence demonstrate[d] that Defendant had a pattern of underpaying both visa and non-visa workers before and during the time he filled out the Petition and had the intent to continue to underpay workers and charge visa fees."

Anderton's arguments and evidence were presented to the jury, which was entitled to weigh the evidence, and still convicted him. As noted above, this court decides only whether the evidence admitted at trial was sufficient for "a reasonable trier of fact [to] conclude . . . the elements of the offense were

established beyond a reasonable doubt." *Suarez*, 879 F.3d at 630 (citation omitted). There was sufficient evidence to convict on this count.

### III.   The Search Warrants

Anderton argues that the search warrants were not particularized and essentially authorized a general search in violation of the Fourth Amendment. He presented these arguments to the district court in a motion to suppress, which was denied.[1] Attachment F to the warrant lists the items to be searched for/seized. Anderton argues that Attachment F:

> . . . authorized the seizure of all business records without limitation and all personal records pertaining in any way to financial matters, and all electronic devices and electronic storage devices and electronic media, also without limitation, at any of the search warrant locales, and all electronic mail from the business account.

(emphasis removed). He contends that "there were no limits upon what could be searched for and what could be seized." (emphasis removed). Anderton argues that the good-faith exception cannot apply here because the warrant "fail[s] to particularize the place to be searched or the things to be seized," and it does not apply to general searches. *United States v. Leon*, 468 U.S. 897, 923, 104 S. Ct. 3405, 3421 (1984)).

Anderton mischaracterizes the breadth of Attachment F. For example, Attachment F does not state that "all employee records" may be seized. Instead, it permits the seizure of: "[e]mployee earning and leave statements, employee payroll records, employee time sheets, H2-B visa employee passport and visa records, I-129 Nonimmigrant Worker petition records, U.S. citizen

---

[1] The court also held that Anderton did not have standing to challenge some of the searches, a ruling Anderton does not contest on appeal.

applicant rejection letters, [and] contractor invoices."[2]    The descriptions of other types of items, although broad, are sufficiently particularized as to confine the discretion of the officers conducting the search.  After all, "generic language is permissible if it particularizes the *types* of items to be seized." *United States v. Kimbrough*, 69 F.3d 723, 727 (5th Cir. 1995) (emphasis in original) (citation omitted).  *United States v. Leon* held that "evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible." *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992) (citing *Leon*, 468 U.S. at 922-23, 104 S. Ct. at 3420).  Attachment F was sufficiently particular for the good-faith exception to apply.

## IV.    The Order of Forfeiture

Anderton disputes the order of forfeiture based on his claim that the government did not meet its burden to identify precisely where the A&A office was located, 2949 West Audie Murphy Parkway.  Specifically, Anderton argues that the government failed to provide the correct legal description of the property at trial.  Instead, the government offered legal descriptions of over 300 acres, less than 10 of which were ultimately forfeited.  Consequently, the government never "established a nexus between [the unique legal description of this parcel of real property] and the offense." *See* Fed. R. Crim. P. 32.2(b)(1)(A) (alteration supplied by Anderton).

This contention is meritless. A government trial exhibit accurately described the location of the A&A office at 2949 W. Audie Murphy Parkway, except that it erroneously included a half acre that had been sold to the State of Texas as a right-of-way.  This portion of the property was dismissed from

---

[2] This is not Anderton's only mischaracterization of Attachment F.  He claims that it allows "all personnel and payroll records" to be seized, when it actually allows seizure of "[p]ersonnel and payroll/commission records for all employees that appear to be engaged in the business."

the final order of forfeiture. Anderton does not contend that he received inadequate notice that the government sought to forfeit this property, nor does he contend that it was not subject to forfeiture. His only complaint is that the property description presented by the government included an extra half acre (which was corrected in the final forfeiture order). No error is presented.

For the foregoing reasons, Anderton's convictions and the final order of forfeiture are **AFFIRMED**.