# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 6, 2021

Lyle W. Cayce
Clerk

No. 19-11145

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

GAS PIPE, INCORPORATED; AMY LYNN, INCORPORATED;
GERALD SHULTS; AMY HERRIG,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:14-CR-298-7

Before HAYNES, HIGGINSON, and OLDHAM, *Circuit Judges*.

STEPHEN A. HIGGINSON, *Circuit Judge*:

Appellants Gerald Shults and Amy Herrig, along with two corporate entities that they owned and controlled, owned and operated a chain of smoke shops in Texas and New Mexico. The stores sold synthetic cannabinoids branded as "herbal incense," "potpourri," or "aroma therapy products." These products, commonly known as "spice," were labeled "not for human consumption" even though the appellants intended them for exactly that. In late 2013, the Drug Enforcement Administration initiated an undercover investigation into the appellants' spice sales, eventually resulting in their

No. 19-11145

arrest and prosecution.  After a three-week trial, a jury convicted the appellants of one count of conspiracy to defraud the United States, based on their efforts to defraud the Food and Drug Administration and to misbrand drugs.

On appeal, the appellants argue that the district court erred by failing to strike the fraud theory of the indictment, by incorrectly instructing the jury, and by denying their motion for acquittal due to insufficient evidence. Shults and Herrig also challenge the substantive reasonableness of their 36-month sentences.  For the reasons articulated below, we AFFIRM.

I.

Appellants Gas Pipe, Inc., Amy Lynn, Inc., Gerald Shults, and Amy Herrig owned and operated a chain of smoke shops in Texas and New Mexico.[1]  Among the products on offer at Gas Pipe stores were synthetic-cannabinoid products branded as "herbal incense," "potpourri," or "aroma therapy products," commonly known as "spice."  Spice, when smoked, produces a stimulant, depressant, or hallucinogenic effect on the central nervous system.

For the past decade, the federal government has scheduled various synthetic cannabinoids as illegal controlled substances.  Given that there are more than 700 known synthetic cannabinoids, the process of scheduling is iterative, with more synthetic cannabinoids being scheduled as the Drug Enforcement Agency ("DEA") and Food and Drug Administration ("FDA") analyze them and their effects.  But regardless of whether a

---

[1] Shults owned Gas Pipe, Inc. and Amy Lynn, Inc.  Herrig, Shults's daughter, helped run the companies.

No. 19-11145

synthetic cannabinoid has been scheduled, it may not be sold for human consumption absent FDA approval and proper labeling.

The appellants labeled their products as "not for human consumption." But, as the appellants stipulated at trial, they knew that the spice products sold by Gas Pipe stores were mislabeled because they were intended for human consumption. Indeed, Gas Pipe's spice products were sometimes rated based on their "strength," meaning how "high" it would get the user. Between 2011 and 2014, the appellants sold more than two million units of spice totaling more than $40 million in revenue.

In late 2013, the DEA started an undercover investigation into the appellants' spice sales. DEA agents posed as customers and made 34 "controlled buys" to determine whether the appellants were selling spice for human consumption. The agents had the spice analyzed by a lab, and results revealed that the spice contained various synthetic cannabinoids. On June 4, 2014, DEA agents executed search warrants at all of the appellants' stores and warehouses and seized spice containing synthetic cannabinoids, some of which had already been scheduled as controlled substances.

A grand jury returned a Third Superseding Indictment in September 2016. The indictment charged the appellants and six of their employees with 11 counts.[2] Count One charged the appellants with violating 18 U.S.C. § 371, which, inter alia, prohibits conspiracies to "defraud the United States." Specifically, this Count alleged that the appellants (1) conspired to defraud the FDA and (2) conspired to commit felony misbranding under 21 U.S.C. §§ 331, 333(a)(2), and 352 "by introducing or delivering an adulterated or

---

[2] Three of the employees pleaded guilty, one of whom testified for the Government at trial. The district court granted the fourth employee's Rule 29 motion. The jury acquitted the two remaining employees.

No. 19-11145

misbranded drug into interstate commerce with the intent to defraud or mislead."

After a three-week trial, the jury found the appellants guilty on Count One and acquitted them on the remaining counts.[3] Subsequently, after a two-day hearing, the district court sentenced Shults and Herrig to 36 months' imprisonment, two years' supervised release, and a $100 special assessment. The court sentenced each of the corporate entities, Gas Pipe and Amy Lynn, to a $25,000 fine.

## II.

The appellants first make two arguments as to why Count One of the indictment was legally insufficient. Because they preserved their challenges, we review them de novo. *United States v. Anderton*, 901 F.3d 278, 282 (5th Cir. 2018).

First, the appellants argue that the word "defraud," as used in 18 U.S.C. § 371, should be cabined to its common law meaning of cheating the Government out of property or money. It cannot, they say, reach agreements for the purpose of impeding a government agency's functions. As the appellants acknowledge, however, a long line of Supreme Court and circuit precedent holds otherwise, and we reject this argument as foreclosed.[4]

---

[3] The ten other counts charged in the indictment were: conspiracy to commit mail and wire fraud (Count Two); assorted controlled substance–related offenses (Counts Three through Ten); and conspiracy to commit money laundering (Count Eleven). Prior to trial, the district court granted the Government's motion to dismiss Count Two.

[4] *See Haas v. Henkel*, 216 U.S. 462, 479 (1910) ("[I]t is not essential that such a conspiracy shall contemplate a financial loss or that one shall result. The statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government."); *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924) ("It is not necessary that the government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official

4

No. 19-11145

Second, the appellants argue that this court should impose a "limiting principle" on § 371's defraud clause in light of the Supreme Court's recent construction of purportedly similar language in another federal criminal statute. Specifically, they ask this Court to extend a rule announced in *Marinello v. United States*, 138 S. Ct. 1101 (2018)—that to convict under 26 U.S.C. § 7212(a)'s omnibus clause, the Government must show a "nexus" between the defendant's conduct and a pending or reasonably foreseeable tax-related administrative proceeding, such as an investigation or audit, *id.* at 1109–10—and apply it to § 371. A recent case, *United States v. Herman*, No. 19-50830, --- F.3d ---- (5th Cir. May 6, 2021), controls. In *Herman*, we rejected an identical argument and declined to extend the *Marinello* nexus requirement to § 371's defraud clause, and we reject the appellants' arguments as foreclosed here.

These same two legal arguments also form the basis of the appellants' challenge to the district court's conspiracy-to-defraud jury instructions, and thus that challenge also fails. The appellants preserved their objections to the conspiracy-to-defraud instructions. We ordinarily review jury instructions for abuse of discretion. But when, as here, the appellants argue that the instruction misstates an element of the offense, that is an issue of statutory construction, which we review de novo subject to harmless error review. *United States v. Garcia-Gonzalez*, 714 F.3d 306, 312 (5th Cir. 2013); *United States v. Guevara*, 408 F.3d 252, 257 (5th Cir. 2005).

---

action and purpose shall be defeated by misrepresentation, chicane, or the overreaching of those charged with carrying out the governmental intention."); *Dennis v. United States*, 384 U.S. 855, 861 (1966) (affirming *Hammerschmidt*); *United States v. Haga*, 821 F.2d 1036, 1040 (5th Cir. 1987) (applying *Hammerschmidt*); *United States v. Hopkins*, 916 F.2d 207, 213 (5th Cir. 1990) (same); *United States v. Martin*, 332 F.3d 827, 834 (5th Cir. 2003) (same); *see also United States v. Coplan*, 703 F.3d 46, 61 (2d Cir. 2012) (applying *Hammerschmidt* and its progeny despite noting "infirmities in the history and deployment of [§ 371]").

No. 19-11145

Specifically, the appellants argue that the district court committed reversible error in its conspiracy-to-defraud jury instructions by (1) failing to limit the defraud theory to agreements to cheat the Government out of money or property and (2) refusing to provide a *Marinello* instruction that the Government must prove a nexus between the conspiracy and a particular administrative proceeding. Because we rejected the appellants' two legal arguments above about the scope of § 371's defraud clause and the effect of *Marinello*, we accordingly hold that the district court's conspiracy-to-defraud jury instructions were correct statements of law.

## III.

The appellants next challenge the district court's jury instructions about felony misbranding in two respects. First, they argue that 21 U.S.C. § 333(a)(2)'s requirement that a violation be committed with "intent to defraud or mislead" incorporates a separate materiality element that was not included in the jury charge. Second, the appellants contest the district court's refusal to instruct the jury that an "intent to defraud or mislead" under § 333(a)(2) requires "an intent to deceive or cheat connected with the misbranding."

## A.

The appellants' first claim of instructional error—that the district court failed to include materiality as an element of felony misbranding—asserts misstatement of an element and hinges on statutory interpretation. The court's review is therefore de novo, subject to harmless error analysis. *See Garcia-Gonzalez*, 714 F.3d at 312; *Guevara*, 408 F.3d at 257.

Section 333 of the Food, Drug, and Cosmetic Act ("FDCA") imposes felony liability for misbranding drugs with the "intent to defraud or mislead." 21 U.S.C. § 333(a)(2). Invoking *Neder v. United States*, 527 U.S. 1 (1999), and *United States v. Watkins*, 278 F.3d 961 (9th Cir. 2002), the appellants argue

6

that this FDCA provision requires proof of materiality. In general, a statement is material if it has "a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed." *Neder*, 571 U.S. at 16 (alteration in original) (quoting *United States v. Gaudin*, 515 U.S. 506, 509 (1995)); *see also United States v. Arlen*, 947 F.2d 139, 143 (5th Cir. 1991) (finding felony misbranding when the defendant, inter alia, acted with the "specific intent to defraud or mislead an *identifiable government agency*" (emphasis added)). Thus, if applicable here, proof of materiality would require demonstrating that the appellants' misbranding had a tendency to influence, or was capable of influencing, the FDA's decisionmaking.

In *Neder*, the Supreme Court considered whether materiality is an element of a "scheme or artifice to defraud" under the federal mail fraud (18 U.S.C. § 1341), wire fraud (*id.* § 1343), and bank fraud (*id.* § 1344) statutes. 571 U.S. at 20. Invoking the "well-established rule of construction that '[w]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms,'" the Court concluded that "the common law could not have conceived of 'fraud' without proof of materiality." *Id.* at 21–22 (alterations in original) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322 (1992)). Accordingly, the Court held that it "must *presume* that Congress intended to incorporate materiality 'unless the statute otherwise dictates.'" *Id.* at 23 (quoting *Darden,* 503 U.S. at 322). In *Watkins*, the Ninth Circuit followed the logic of *Neder* and extended the materiality requirement to the "intent to defraud" and the "intent to . . . mislead" FDCA provisions at issue here. 278 F.3d at 966, 969.

No. 19-11145

Assuming without deciding that materiality is an element of § 333(a)(2)'s felony misbranding offense,[5] under the facts of this case, any error was harmless. *See Neder*, 527 U.S. at 8–15.

To the extent that the district court erred in omitting materiality as an element of § 333(a)(2), the error was harmless if, "after a 'thorough examination of the record,' [we are] able to 'conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error.'" *United States v. Cessa*, 785 F.3d 165, 186 (5th Cir. 2015) (quoting *United States v. Skilling*, 638 F.3d 480, 482 (5th Cir. 2011)); *see also Neder*, 527 U.S. at 19. Here, we must determine whether the jury would have found that the appellants' misbranding was material—that is, had "a natural tendency to

---

[5] The text and structure of the FDCA cast doubt as to whether *Neder* extends to § 333(a)(2)'s felony misbranding offense. Although § 333(a)(2) itself does not specifically reference materiality, it is interpretively significant that other sections of the FCDA do. *E.g.,* 21 U.S.C. §§ 331(q)(2), 331(y)(1), 334(a)(1)(B), 335a(g)(1)(A)(ii), 335b(a)(1), 335c(a)(1), 343(a)(2) (expressly prohibiting misleading representations or omissions that are "material"). This suggests choice, and a choice to not employ a term in one provision but to use it in neighboring provisions suggests a meaning through the absence of that term. *See Pereira v. Sessions*, 138 S. Ct. 2105, 2114 (2018) (looking to a "neighboring statutory provision" for "contextual support"); *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion. . . . We would not presume to ascribe this difference to a simple mistake in draftsmanship." (first alteration in original) (internal quotation marks and citation omitted)). Another provision of the FDCA, however, cuts in the opposite direction. The statute's definitions section indicates that materiality must be considered in evaluating misbranding offenses. *See* 21 U.S.C. § 321(n) ("If an article is alleged to be misbranded because the labeling or advertising is misleading, then in determining whether the labeling or advertising is misleading there shall be taken into account . . . the extent to which the labeling or advertising fails to reveal facts *material* in the light of such representations or *material* with respect to consequences which may result from the use of the article . . . ." (emphasis added)). But we pretermit this debate because, under the facts of this case, any error the district court made in omitting materiality as an element of § 333(a)(2) was harmless.

8

influence, or [was] capable of influencing" the FDA's decisionmaking. *Neder*, 527 U.S. at 16; *accord Arlen*, 947 F.2d at 143.

Our review of the record shows, beyond a reasonable doubt, that the jury would have concluded that the appellants' misbranding tended to influence, or was capable of influencing, the FDA's decisionmaking based on evidence presented at trial.

First, Lawrence Shahwan, who supplied spice to the appellants, testified that the reason he labeled his product "Not for Human Consumption" was because that was "the only way that we could sell it to the public. *If it was stated for human consumption, it would be subject to FDA regulations.* And obviously we wouldn't be able to sell these products for human consumption." Second, Joshua Campbell, a former manager of a Gas Pipe store, testified that the appellants sold spice packaged as if it were "herbal incense" or "potpourri" even though "[i]t really wasn't." He testified that this terminology was "important" to Shults and Herrig "[b]ecause of the legality of what spice was." Directly connecting this practice to the appellants' intent, Campbell testified that Shults and Herrig "*didn't want to sell [spice] as a consumable because it would have to go through the FDA . . . .*" Campbell was not simply guessing as to the appellants' intent; he testified that they were "very strict on terminology" and that he participated in weekly conference calls with Shults and Herrig in which spice sales were their "primary concern."

Although the Government highlights other evidence—including emails and contemporaneous notes that show the appellants were monitoring FDA actions regarding spice and additional witness testimony about the appellants' knowledge of the regulatory landscape—Shahwan's and Campbell's testimony are sufficient to show that the appellants sold spice labeled "Not for Human Consumption" to evade the FDA's regulatory

scrutiny and that, if the appellants' products had been correctly labeled as intended for human consumption, they would have been subject to FDA regulation. The mislabeling therefore had "a natural tendency to influence, or [was] capable of influencing" the FDA's decisionmaking and thus was "material." *Neder*, 527 U.S. at 16.

### B.

The appellants' second claim is that the district court should have specifically defined § 333(a)(2)'s use of "intent to defraud or mislead" as "an intent to deceive or cheat connected with the misbranding."

This argument presents a "framing" issue reviewed for abuse of discretion. *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 240 (5th Cir. 2014); *see also United States v. Jones*, 664 F.3d 966, 978 (5th Cir. 2011). Under that standard, "[w]e will reverse the district court's decision only if the requested instruction (1) was a substantially correct statement of the law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the defendant's ability to present a given defense." *United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011) (internal quotation marks omitted) (quoting *Cooper Indus., Inc. v. Tarmac Roofing Sys., Inc.*, 276 F.3d 704, 714 (5th Cir. 2002)). We "afford the trial court great latitude in the framing and structure of jury instructions." *Eastman*, 775 F.3d at 240.

Count One of the indictment charged the appellants with conspiring to defraud the United States by (1) conspiring to defraud the FDA and (2) conspiring to introduce misbranded drugs into interstate commerce with the intent to defraud or mislead. When instructing the jury about the conspiracy to defraud the FDA, the district court separately defined "defraud": "The word 'defraud' here is not limited to its ordinary meaning of cheating the government out of money or property; it also includes

impairing, obstructing, defeating, or interfering with the lawful function of the government or one if its agencies by dishonest means." When instructing the jury about conspiracy to commit felony misbranding, the district court did not separately define "defraud," but when instructing the jury about the lesser included offense, conspiracy to commit simple misbranding, the district court referenced its earlier definition of the word "defraud": "You should find the defendant you are considering guilty of conspiracy to commit simple misbranding if . . . the defendant made an agreement as a result of which the misbranding offense . . . occurred, but that the government has not proved that the defendant you are considering intended to defraud or mislead, *as I have defined that phrase*." The appellants argue that by instructing the jury on felony misbranding with the bare statutory language "intent to defraud or mislead" and then cross-referencing the "defraud" definition, the district court's instructions confused the jury on the meaning of "defraud or mislead" as used in the felony misbranding offense.

This court rejected a similar argument in *United States v. Haas*, 171 F.3d 259 (5th Cir. 1999). Like the appellants, the defendant in that case was convicted of conspiracy to defraud the FDA and conspiracy to commit felony misbranding. *Id.* at 263–64. Also like the appellants, the defendant argued that "the district court erred when it failed to define the phrase 'intent to defraud'" under § 333(a)(2) as intent "to deceive or to cheat." *Id.* at 267. This court affirmed, holding that "this additional language, beyond the instruction that the court gave, would add little to the jurors' understanding of the phrase 'intent to defraud.'" *Id.*

The appellants try to distinguish *Haas* by pointing out that the jury instructions in that case did at least specify that fraudulent misbranding requires "deceit, craft or trickery or at least . . . means that are dishonest." Here, however, the district court's instructions on the meaning of "defraud" included a similar gloss, referencing "cheating" and "dishonest means."

The appellants do not explain why these words should be deemed inadequate. Moreover, courts have interpreted § 333(a)(2)'s use of "intent to defraud or mislead" along similar lines as § 371's use of "defraud." *Compare Tanner v. United States*, 483 U.S. 107, 128 (1987) ("[T]he fraud covered by [§ 371] reaches any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government." (internal quotation marks and citation omitted)), *with Arlen*, 947 F.2d at 143 (holding that "intent to defraud or mislead" under § 333(a)(2) reaches misbranding offenses "committed with the specific intent to defraud or mislead an identifiable government agency"). The district court did not err in declining to specifically equate "intent to defraud or mislead" with "intent to deceive or cheat."

The appellants also argue that the district court erred by not instructing the jury that an "intent to deceive or cheat" must be "connected" to misbranding. We disagree. Although the district court did not adopt the exact wording proposed by the appellants, it instructed the jury that a conviction for felony misbranding required a finding "[t]hat a person mislabeled the drug and the defendant, *by such mislabeling*, intended to defraud or mislead."

For these reasons, the district court's jury instruction "substantially covered" the appellants' proposed instruction and did not misstate the law. *Wright*, 634 F.3d at 775.

## IV.

The appellants next challenge the sufficiency of the evidence for conviction under Count One.

The parties agree that the appellants preserved their sufficiency challenges to their convictions by timely moving for acquittal under Rule 29 of the Federal Rules of Criminal Procedure. *See United States v. Bolton*, 908

F.3d 75, 89 (5th Cir. 2018); FED. R. CRIM. P. 29(a), (c).  This court "review[s] preserved challenges to the sufficiency of the evidence de novo, but [the court is] highly deferential to the verdict." *United States v. Scott*, 892 F.3d 791, 796 (5th Cir. 2018) (internal quotation marks and citation omitted).  This means that the court "view[s] all evidence, whether circumstantial or direct, in the light most favorable to the government, with all reasonable inferences and credibility choices to be made in support of the jury's verdict." *Bolton*, 908 F.3d at 89 (internal quotation marks and citation omitted).  Evidence is sufficient to support a conviction so long as "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Scott*, 892 F.3d at 797 (emphasis, internal quotation marks, and citation omitted).

## A.

The appellants raise a combination of legal and factual challenges to the sufficiency of the evidence supporting their convictions for conspiracy to defraud the FDA.  They assert that (1) *Marinello* upsets their conviction because there was insufficient evidence showing that the appellants agreed to interfere with or obstruct "a particular administrative proceeding"; (2) the FDA could not have been defrauded because there was no evidence of an ongoing FDA investigation into their spice sales before the June 2014 raid; and (3) the evidence was insufficient for the jury to rationally conclude that they intended to defraud the FDA.

First, the appellants reprise their argument that *Marinello*, 138 S. Ct. 1101, required the Government to put on evidence that they agreed to interfere with or obstruct a particular FDA proceeding that was then pending or reasonably foreseeable.  For the reasons already discussed, *supra* section II, the Government was not required to make this showing.

Second, the appellants claim that the FDA could not have been defrauded within the meaning of § 371 because there was no evidence of the FDA's involvement prior to the June 2014 raids and therefore they could not have intentionally or with knowledge defeated the FDA's mission.  This argument misstates the law: the Government is not required to establish the FDA's participation in the underlying criminal investigation or the appellants' knowledge of any such participation.  "The defraud clause of § 371 reaches . . . any conspiracy designed to impair, obstruct, or defeat the lawful function of any department of the government"—in this case, a conspiracy to avoid contact with the FDA to avoid regulation.  *United States v. Clark*, 139 F.3d 485, 488–89 (5th Cir. 1998); *see also United States v. Dessart*, 823 F.3d 395, 403 (7th Cir. 2016) ("§ 333(a)(2) applies if the defendant intended to deceive either consumers or the FDA or both.").  At bottom, this argument repackages the appellants' incorrect *Marinello* rationale.

Third, the appellants assert that the Government did not present evidence from which the jury could conclude that they intended to defraud the FDA.  We disagree.  As discussed, *supra* section III.A, the appellants' supplier, Lawrence Shahwan, and their employee, Joshua Campbell, both testified that the appellants labeled these products "not for human consumption" to avoid scrutiny or regulation by the FDA.  Shahwan also testified that it was obvious that the products could not have been sold if intended for human consumption.  Viewing the evidence in the light most favorable to the Government and all reasonable inferences in support of the jury's verdict, *Bolton*, 908 F.3d at 89, we conclude that a rational jury could find that the evidence was sufficient to convict the appellants of conspiracy to defraud the FDA.  *See Haas*, 171 F.3d at 266 ("We need not list all of the evidence a jury could have considered in concluding that [the appellants]

intended to defraud the FDA—we will only consider a few examples."); *Dessart*, 823 F.3d at 403.

### B.

The appellants also argue that the evidence was insufficient to prove the felony misbranding offense because the Government did not establish beyond a reasonable doubt that the public was misled by the labeling or that the appellants intended to defraud or mislead the Government. We need not reach this question. The district court gave a unanimity instruction, and the jury convicted the appellants on Count One after separately concluding that the appellants conspired to defraud the FDA and also that they conspired to commit felony misbranding. The appellants' convictions on Count One can be sustained by our conclusion that the evidence was sufficient to convict the appellants of conspiring to defraud the FDA. *See United States v. Mauskar*, 557 F.3d 219, 229 (5th Cir. 2009) ("[A] general guilty verdict on a multiple-object conspiracy may stand even if the evidence is insufficient to sustain a conviction on one of the charged objects." (alteration in original) (quoting *United States v. Mann*, 493 F.3d 484, 492 (5th Cir.2007))).

### V.

Finally, Shults and Herrig appeal the substantive reasonableness of their 36-month sentences, which we review for abuse of discretion. *United States v. Sifuentes*, 945 F.3d 865, 868 (5th Cir. 2019).

"This court recognizes three types of sentences: (1) a sentence within a properly calculated Guidelines range; (2) a sentence that includes an upward or downward departure as allowed by the Guidelines; and (3) a non-Guideline sentence or a variance that is outside of the relevant Guidelines range." *United States v. Brantley*, 537 F.3d 347, 349 (5th Cir. 2008) (internal quotation marks omitted) (quoting *United States v. Smith*, 440 F.3d 704, 706–08 (5th Cir. 2006)). If "the district court imposes a sentence that is outside

the guidelines framework, such a sentence is considered a variance." *United States v. Jacobs*, 635 F.3d 778, 782 (5th Cir. 2011) (internal quotation marks omitted). The district court must explain its reasons for imposing any variance under the § 3553(a) factors. *Id.* "A non-Guideline sentence unreasonably fails to reflect the statutory sentencing factors where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *Smith*, 440 F.3d at 708.

Contrary to Shults and Herrig's assertion, the district court imposed their sentences as upward variances after carefully considering the § 3553(a) factors. The court highlighted that Shults and Herrig engaged in "very serious" conduct because they sold a product that "is dangerous and addictive"; discussed Shults's and Herrig's histories and characteristics; and confirmed that the sentences imposed were necessary "to promote respect for the law, while justly punishing" Shults and Herrig and "hopefully deterring others from engaging in similar conduct." The court recognized that the 36-month sentences exceeded the Guidelines range for Shults and Herrig but confirmed its view that the § 3553(a) factors required those sentences.

In their opening brief, Shults and Herrig incorrectly argue that the variance rested "on the same ground" as the departure, and they do not argue that the district court misapplied the § 3553(a) factors. Only in their reply brief do they assert an error as to the § 3553(a) factors, but arguments raised for the first time in a reply brief are waived. *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005). Shults and Herrig have not shown that the district court abused its discretion in imposing the upward variances.

Because the district court justified Shults's and Herrig's sentences as both variances and departures, we need not consider the propriety of their sentences as an upward departure. Instead, we affirm the sentences on the district court's basis as an upward variance justified by the § 3553(a) factors. *See United States v. Hebert*, 813 F.3d 551, 561 (5th Cir. 2015) (declining to reach an "issue of first impression" whether a particular sentencing departure was impermissible "because [defendant's] sentence may be affirmed on the district court's alternate basis for the sentence—that the sentence is appropriate as an upward variance"); *Brantley*, 537 F.3d at 349 ("The district court stated that based on the § 3553(a) factors, the sentence was outside of the Guidelines range both as an upward departure and as a variance. For present purposes, however, the specific characterization is irrelevant because . . . the sentence imposed was reasonable under the totality of the relevant statutory factors." (internal quotation marks and citation omitted)).

## VI.

We AFFIRM the district court on all issues, holding that the allegations in Count One of the indictment charging the appellants with conspiracy to defraud the FDA in violation of 18 U.S.C. § 371 were legally sufficient, the district court correctly instructed the jury on the charge of conspiracy to defraud the Government, the district court correctly instructed the jury on the charge of conspiracy to commit felony misbranding, the evidence was sufficient for the jury to convict the appellants on Count One, and Shults's and Herrig's 36-month prison sentences were substantively reasonable.