# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 21, 2023

Lyle W. Cayce
Clerk

No. 21-40565

United States of America,

*Plaintiff—Appellee*,

*versus*

Ivis Orestes Irias-Romero,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:20-CR-1348-1

Before Jolly, Dennis, and Higginson, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

A jury found Ivis Orestes Irias-Romero guilty of transporting within the United States an alien who "has come to, entered, or remains in the United States in violation of law." 8 U.S.C. § 1324(a)(1)(A)(ii). On appeal, Irias-Romero challenges his conviction as based on insufficient evidence. For the following reasons, we affirm.

I.

On the evening of November 14, 2020, a white pickup truck entered a primary inspection lane at the Border Patrol checkpoint near Sarita, Texas.

No. 21-40565

Border Patrol Agent Derek Brickan was conducting inspections that night and noticed two people in the truck.

At trial, Agent Brickan testified that he first asked the driver, Irias-Romero, whether he was a United States citizen. Irias-Romero responded that he was a lawful permanent resident of the United States. Agent Brickan then posed the same question to Irias-Romero's passenger, Nidia Alfaro-Calero. She did not reply. Irias-Romero answered that the passenger was his wife and a United States citizen, and he gave Agent Brickan a marriage certificate. That certificate said that Irias-Romero was married to a woman named Cinthia Zarahi Corea-Gamez.

After looking at the marriage certificate, Agent Brickan asked Alfaro-Calero in Spanish about her citizenship. She said that she was from Honduras and lived in Houston. Agent Brickan asked Alfaro-Calero if she was legally present in the United States, and she said that she was not. Based on those statements, Agent Brickan arrested Irias-Romero and Alfaro-Calero.

Border Patrol Agent Luis Alfaro interviewed Irias-Romero after his arrest. The government entered an English translation of the transcribed interview into evidence, and Agent Alfaro testified about it. During the interview, Irias-Romero confirmed that his passenger's name was Nidia Alfaro-Calero. Irias-Romero explained that he had met Alfaro-Calero on Facebook and had known her for four years.

On November 13, 2020, Alfaro-Calero contacted Irias-Romero to ask for a favor. She wanted a ride from Brownsville to Houston and gave Irias-Romero the address of a house where he could pick her up. Irias-Romero agreed. He planned to help Alfaro-Calero find a place to stay when they got to Houston.

No. 21-40565

During the post-arrest interview, the agent asked Irias-Romero if he had known that Alfaro-Calero was "illegal," and he replied that he had. He said that Alfaro-Calero had told him that she was "illegal." Irias-Romero further explained that if he had known about the checkpoint, he would have refused to give Alfaro-Calero a ride. He said that he was married to the woman listed on the marriage certificate, Cinthia Zarahi Corea-Gamez, and that he gave Agent Brickan the certificate because of an "involuntary," "nervous reaction." But Irias-Romero also admitted that he told Alfaro-Calero, "if a police officer stops us, tell them that you are my wife."

Alfaro-Calero testified as a Government witness. Speaking through an interpreter, she stated that in June or July of 2020, she decided to move from Honduras to the United States "[b]ecause of death threats from the maras." She left Honduras on foot with a caravan of people, and eventually arrived in Mexico, where she was given a permit that allowed her to stay in the country for 90 days. Alfaro-Calero planned to use those 90 days to apply for a humanitarian visa from Mexico. However, she was kidnapped and sold to a man named "El Burro."

At trial, Alfaro-Calero testified that her captors forced her to cross into the United States three times. On the first two occasions, immigration officials apprehended her, and she was taken back to Mexico. But on her third crossing, immigration officials did not apprehend her. After entering the United States, she spent two days and nights in the brush with one of her captors, who sexually abused and beat her. Her captor eventually took her to a house, where she learned that El Burro was demanding a $10,000 ransom. Alfaro-Calero was able to get $1,000 from her mother and cousin, and El Burro let her go. She then contacted Irias-Romero to ask for his help. Irias-Romero said "[t]hat he didn't have money, but that he could come to get [her]." She told him to come to the house by 9 P.M. because she was worried that her kidnappers would harm her if she wasn't gone by then. Alfaro-

Calero testified that the kidnappers showed her a video depicting the torture and murder of a girl. Yet she did not ask Irias-Romero to call the police.

After Irias-Romero picked up Alfaro-Calero, she told him about her kidnapping and that she wanted him to take her "[w]herever [she] could be far away from [those] people." He said that he would take her to a hotel in Houston for several days and then "rent a place for [her] to live and that he was going to look for a job for [her]." Alfaro-Calero also testified that Irias-Romero knew that she was in the United States illegally when he went to pick her up at the house.

A grand jury charged Irias-Romero with violating 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1324(a)(1)(A)(v)(II), and 1324(a)(1)(B)(ii). The one-count indictment alleged that Alfaro-Calero "was an alien who had come to, entered, and remained in the United States in violation of law," and that Irias-Romero used a motor vehicle to "transport, move, attempt to transport, and attempt to move" her in furtherance of that violation of law.

At the close of the Government's case, Irias-Romero moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. Irias-Romero argued that there was insufficient evidence that Alfaro-Calero had entered or remained in the United States in violation of law. The district court denied his motion. Irias-Romero did not testify or call any other witnesses in his defense. The jury then returned its verdict finding him guilty as charged in the indictment.

The district court sentenced Irias-Romero to four months in prison, followed by two years of supervised release.

Irias-Romero filed a timely notice of appeal.

## II.

No. 21-40565

Irias-Romero raises a single issue on appeal: that the evidence is insufficient to sustain his conviction. Irias-Romero moved for a judgment of acquittal on that basis.

"Where, as here, a defendant has timely moved for a judgment of acquittal, this court reviews challenges to the sufficiency of the evidence de novo." *United States v. Nicholson*, 961 F.3d 328, 338 (5th Cir. 2020). When assessing the sufficiency of the evidence, "we review the record to determine whether, considering the evidence and all reasonable inferences in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gibson*, 875 F.3d 179, 185 (5th Cir. 2017) (cleaned up). "This is a 'highly deferential' task, one requiring us to accept all credibility choices and reasonable inferences the jury made to support its verdict." *United States v. Spalding*, 894 F.3d 173, 181 (5th Cir. 2018) (citation omitted).

Irias-Romero was convicted under 8 U.S.C. § 1324(a)(1)(A)(ii), which provides that any person who "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law . . . shall be punished." To convict Irias-Romero of violating this statute, "the jury had to find beyond a reasonable doubt that (1) an alien illegally entered or remained in the United States; (2) [Irias-Romero] transported the alien within the United States intending to further that unlawful purpose; and (3) [Irias-Romero] knew or recklessly disregarded the fact that the alien was illegally in the United States." *United States v. Gaspar-Felipe*, 4 F.4th 330, 341 (5th Cir. 2021) (citing 8 U.S.C. § 1324(a)(1)(A)(ii); *United States v. Nolasco-Rosas*, 286 F.3d 762, 765 (5th Cir. 2002)). Irias-Romero does not dispute the sufficiency of the jury instructions pertaining to those offense elements or available defenses.

No. 21-40565

Irias-Romero argues that the Government failed to prove the first element of this offense because there was insufficient evidence from which a rational jury could find that Alfaro-Calero entered or remained in the country in violation of law. We disagree.

A rational jury could infer that Alfaro-Calero illegally entered or remained in the United States from the testimony confirming that she was illegally present in the country. When Agent Brickan asked Alfaro-Calero if she was illegally present, she answered yes. During Irias-Romero's post-arrest interview, Irias-Romero said that he heard from Alfaro-Calero that she was "illegal." And Alfaro-Calero corroborated at trial that Irias-Romero knew that she was in the United States illegally when he went to pick her up. Drawing all inferences in favor of the Government, *Gibson*, 875 F.3d at 185, a jury could conclude that Alfaro-Calero had entered or remained in the country in violation of law, *see* 8 U.S.C. § 1325(a)(1) (prohibiting aliens from "enter[ing] or attempt[ing] to enter the United States at any time or place other than as designated by immigration officers"); *id.* § 1326(a) (prohibiting, *inter alia*, an alien who has been "removed" from "[being] at any time found in[] the United States"); *cf. United States v. Anderton*, 901 F.3d 278, 285 (5th Cir. 2018) (holding that because "it is a civil offense" "for a removable alien to remain present in the United States," "[a]liens who reside here without authorization are 'in violation of law' for purposes of Section 1324(a)(1)(A)(iv) and (v)" (citation omitted)).[1]

---

[1] The immigration statute designates certain judicial or administrative records, other official records, and immigration officer testimony as "prima facie evidence that an alien . . . had come to, entered, or remained in the United States in violation of law" for purposes of Section 1324(a). 8 U.S.C. § 1324(b)(3). Irias-Romero argues that the Government failed to present such prima facie evidence at trial. But the statute does not limit the kinds of evidence admissible to prove that an alien illegally entered or remained in the United States. *See* 8 U.S.C. § 1324(b)(3). A rational jury could infer a relevant violation of law from other types of evidence, including the testimony of a criminal defendant or

No. 21-40565

Irias-Romero contends that because Alfaro-Calero testified that she entered the United States against her will, she either did not violate the law in entering the United States or would have a meritorious duress defense to an illegal entry charge. But even if Alfaro-Calero's kidnappers forced her to cross the border and held her captive, the jury heard sufficient evidence to find that Alfaro-Calero illegally entered or remained in the country. As we explained, Alfaro-Calero acknowledged that she was breaking the law by being in the United States. The jury was entitled to credit that evidence and give it greater weight than her testimony about her kidnapping. *See United States v. Jordan*, 945 F.3d 245, 256 (5th Cir. 2019). And notwithstanding Alfaro-Calero's testimony that she did not intend to be in the United States, evidence exists to support a contrary inference. Irias-Romero was driving Alfaro-Calero to Houston to get a job instead of to a hospital or the police. Indeed, despite the abuse that Alfaro-Calero suffered, she never asked Irias-Romero to contact law enforcement. Those circumstances surrounding Alfaro-Calero's escape permit the inference that she intended to stay in the United States instead of returning to Mexico or Honduras. *See also Anderton*, 901 F.3d at 285. Viewed in the light most favorable to the Government, *United States v. Green*, 47 F.4th 279, 290 (5th Cir. 2022), that evidence would permit a rational jury to find that Alfaro-Calero had violated the law within the meaning of Section 1324(a)(1)(A)(ii).

---

victim. Ordinarily, such a witness does not have to be an immigration expert or lawyer for her testimony to permit the inference that an alien's conduct violated the law under Section 1324(a)(1)(A)(ii). *See also United States v. Lopez-Moreno*, 420 F.3d 420, 438 (5th Cir. 2005) (finding evidence of transported aliens' violation of law sufficient where, among other evidence, police officer testified that defendant tentatively agreed with officer's statement that some transported aliens "probably ain't legal"); *United States v. Hernandez*, 913 F.2d 568, 570 (8th Cir. 1990) (finding evidence of transported aliens' violation of law sufficient where aliens told defendant that they were undocumented and defendant helped aliens navigate around a checkpoint).

No. 21-40565

Ultimately, Irias-Romero presented his theory of the case to the jury, and the jury rejected it. In closing, defense counsel argued that Alfaro-Calero was kidnapped and that Irias-Romero's "only plan was to get her out of harm's way."[2] Yet the jury returned a guilty verdict. Because that verdict was based on sufficient evidence, we will not disturb it on appeal.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[2] A true Good Samaritan may be able to argue that scienter is lacking if that person acts out of necessity to save an alien from death or serious bodily injury rather than to further the alien's unlawful presence in the United States. *Cf. United States v. Khalil*, 857 F.3d 137, 140 (2d Cir. 2017) (finding evidence insufficient to support conviction for transporting alien where defendant's conduct was intended to terminate alien's presence in United States); *United States v. Dominguez*, 661 F.3d 1051, 1061–62 (11th Cir. 2011) (finding evidence insufficient to support conviction for transporting aliens where defendant took aliens to immigration attorney); *United States v. Stonefish*, 402 F.3d 691, 697 (6th Cir. 2005) (rejecting defendant's argument that he transported aliens "as a humanitarian gesture").